# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Board of Trustees of the UAW Group Health & Welfare Plan, et al. | Civil Action No. 2:14-cv-06247 SDW-CLW |
| Plaintiffs, | *ELECTRONICALLY FILED* |
| vs. | |
| Sergio Acosta, et al. | Return Date: May 4, 2015 |
| Defendants. | ORAL ARGUMENT REQUESTED |

---

## BRIEF ON BEHALF OF DEFENDANT LAWRENCE ACKERMAN IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) and 9(b)

---

**DECOTIIS, FITZPATRICK**
**& COLE, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd., Suite 31
Teaneck, New Jersey 07666
(201) 928-1100

*Attorneys for Defendant*
*Lawrence Ackerman*

On the Brief:
    Russell J. Passamano, Esq.

Of Counsel:
    Jeffrey D. Smith, Esq.

1776962v1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................ii

PRELIMINARY STATEMENT AND STATEMENT OF FACTS............................. 1

LEGAL ARGUMENT ................................................................................... 4

POINT I

THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
MEET THE PLEADING REQUIREMENTS OF THE FEDERAL RULES
OF CIVIL PROCEDURE ............................................................................. 4

    A.    The Pleading Standard. ................................................................. 4

POINT II

PLAINTIFFS' COUNTS III AND IV PURPORTING TO STATE ERISA
CLAIMS MUST BE DISMISSED .................................................................. 7

    A.    Ackerman Is Not a Fiduciary and Any Fees Received
           Are Not Plan Assets Under ERISA.................................................. 8

    B.    Counts III and IV Fail to Plead Facts from Which a
           Prohibited Transaction May be Found ............................................ 13

POINT III

PLAINTIFFS' COUNTS VI AND VII SOUNDING IN FRAUD MUST
BE DISMISSE................................................................................................ 18

    A.    Plaintiffs Have Failed to Meet the Enhanced Pleading
           Standard for Counts VI and VII of the Complaint. ......................... 18

        (1)    Count VI Does Not Allege Specific Facts Sufficient
                to Support a Fraud Claim ..................................................... 20

CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Ashcroft v. Iqbal,
  556 U.S. 662, 129 S. Ct. 1937 , 173 L. Ed. 2d 868 (2009) ................................4, 5, 6

Askew v. R.L. Reppert, Inc.,
  902 F.Supp.2d 676 (E.D. PA 2012) ....................................................................passim

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 127 S. Ct. 1955 , 167 L. Ed. 2d 929 (2007) ....................................4, 5

Braden v. Wal-Mart Stores, Inc.,
  588 F.3d 585 (8th Cir. 2009)......................................................................................4

Capano v. Borough of Stone Harbor,
  530 F.Supp. 1254 (D.N.J. 1982) ...............................................................................19

Collins v. County of Gloucester,
  2008 WL 1374213 (D.N.J. 2008).............................................................................17

Gennari v. Weichart Co. Realtors,
  148 N.J. 582 (1997) ..................................................................................................19

In re Burlington Coat Factory Sec. Litigation,
  114 F.3d 1410 (3d Cir. 1997).....................................................................................5

In re Suprema Specialties, Inc. Securities Litigation,
  438 F.3d 256 (3d Cir. 2006)........................................................................18, 19, 20

Ins. Brokerage Antitrust Litig.,
  2007 U.S. Dist. LEXIS 73220 ..................................................................................23

Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund,
  933 F. Supp. 1124 (D. Mass 1996) ..........................................................................12

Lum v. Bank of America,
  361 F.3d 217 (3d Cir. 2004).............................................................................18, 23

Mills v. Polar Molecular Corp.,
  12 F.3d 1170 (2d Cir. 1993) .....................................................................................19

Morse v. Lower Merion School Dist.,
  132 F.3d 902 (3d Cir. 1997) .......................................................................................5

Naporano Iron & Metal Co. v. American Crane Corp.,
    79 F.Supp.2d 494 (D.N.J. 1999) ................................................................. 19, 20, 21

Phillips v. County of Allegheny,
    515 F.3d 224 (3rd Cir. 2008) ................................................................................ 5

Poling v. K. Hovnanian Enters.,
    99 F.Supp.2d 502 (D.N.J. 2000) ........................................................................ 22

Reich v. Compton,
    57 F.3d 270 (3d Cir.1995) .................................................................................. 12

Renfro v. Unisys Corporation,
    671 F.3d 314 (3d Cir.2011) ................................................................................ 12

Ross v. Bolton,
    904 F.2d 819 (2nd Cir. 1990) ................................................................................ 19

Santiago v. Warminster Twp.,
    629 F.3d 121 (3d Cir. 2010) ................................................................................ 5

Texas v. United States,
    118 S. Ct. 1257 (1998) ....................................................................................... 17

**Statutes**

29 U.S.C. § 1002(21)(A) .................................................................................... 7, 8

29 U.S.C. § 1106 ......................................................................................... 12, 13, 14

29 U.S.C. §§ 1001, et seq. .................................................................................... 1

29 U.S.C. §§1113(2) .......................................................................................... 17

29 U.S.C. §1104(a)(1)-(2) .................................................................................. 12

**Rules**

FED.R.CIV.P. 12(b)(6) ............................................................................... 1, 4, 17

Rule 8 .................................................................................................................. 4

Rule 9(b) ..................................................................................................... passim

Rules 8 and 12(b)(6) .......................................................................................... 4

Rules 8, 12(b)(6) and 9(b) ............................................................................................ 4

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

This Brief is submitted on behalf of Defendant Lawrence Ackerman ("Ackerman") in support of his Motion to Dismiss the Plaintiffs' First Amended Complaint (the "Complaint"). In their Complaint, the Plaintiffs purport to state causes of action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA") and in common law fraud. As detailed herein, dismissal is mandated as the Complaint fails to meet the pleading standards set forth in the Federal Rules of Civil Procedure and controlling caselaw and wholly fails to state claims on which relief may be granted as to Ackerman.

Plaintiffs are the Board of Trustees of the UAW (Local 2326) Health and Welfare Plan and the Health and Welfare Plan (collectively, the "Plan"). The Plan, acting through defendant Sergio Acosta, the Plan's Trustee and administrator, accepted as health insurance Plan participants certain associate union members offered by two companies with which Lawrence Ackerman was associated. Although the Plan, through Acosta,[1] was aware of the facts, and made its own independent eligibility determination, it now contends that these associate members were not eligible for health coverage and seeks to recover from defendants, including Ackerman, health benefits paid on the participants' behalf.

The Complaint begins with a relative few (forty-eight) introductory paragraphs. In those paragraphs, Plaintiffs provide a sketchy description of the union health benefit plan. Eleven of the forty-eight concern Ackerman. The totality of the allegations as to Ackerman – devoid of the factual support necessary to support the conclusory legal theories – are contained in just a handful of paragraphs.

---

[1]   Acosta was "required," inter alia, to make eligibility determinations, report eligibility to insurance providers and pay for coverage. (Complaint. ¶7.)

The first mention of Ackerman, in paragraph 8, is background information about Ackerman and his businesses.  (Complaint ¶ 8.)  From there, Plaintiffs go on to make wholly conclusory statements about the individuals that the Plan had determined to be eligible for health coverage.  (Complaint ¶ 22.)  Plaintiffs allege in that Paragraph that coverage was provided to "individuals who were not employees of either company but who were willing to pay excessive monthly premiums to obtain comprehensive medical and hospitalization coverage provided by the Plan because they were otherwise unable to procure such coverage in the group or individual insurance market due to serious, preexisting health conditions."  (Complaint ¶ 22.)

In similar fashion, the next three paragraphs (Complaint ¶¶ 23 - 25) and paragraph 31, make allegations concerning the collective bargaining agreement and the enrollment of individual health plan participants.  Plaintiffs provide no supporting detail for the conclusions stated in those paragraphs. Plaintiffs provide no details whatsoever about the collective bargaining agreements to which they were a party.  Plaintiffs provide no facts about the applications for membership that they received and approved or about the eligibility determinations that they made.  (Complaint ¶¶ 22 – 25, 31.)  Mixed in are legal conclusions such as that "Ackerman was a party in interest", which is a defined term for ERISA purposes.  Nowhere do Plaintiffs provide factual allegations to support such legal conclusions.

The Complaint then makes conclusory statements about the premiums and payments. (Complaint ¶¶ 28 - 30.)   Nowhere, however, do the Plaintiffs allege that the premiums due to the Plan were not paid.

Paragraphs 32 and 36, the last of the 48 to mention Ackerman, are nothing but self-serving legal conclusions that Ackerman violated ERISA (Complaint ¶ 32) which, according to Plaintiffs' theory, hinges on the eligibility of participants whom they themselves had determined

to be eligible. (Complaint ¶ 36.)

From that thin presentation, Plaintiffs direct four Counts against Ackerman: Count III - ERISA Participant Liability; Count IV - Breach of ERISA Fiduciary Duties/Prohibited Transactions; Count VI - Common Law Fraud and Count VII - Common Law Negligent Misrepresentation.

As we set forth below, the Complaint fails to state facts sufficient to meet the pleading standards for any of those four Counts.  Plaintiffs' allegations fail to state a plausible factual basis for their theory that Ackerman was a Plan fiduciary and that he owed or breached any duty to the Plan under ERISA.  Plaintiffs similarly fail to allege the specific facts necessary to support allegations sounding in fraud.  As such, the Motion to Dismiss should be granted and the Complaint dismissed against Ackerman.

1776962v1

## LEGAL ARGUMENT

## POINT I

## THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO MEET THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE

### A.    The Pleading Standard.

In order to survive a Motion to Dismiss, a complaint must meet the pleading standards set forth in Rules 8, 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  Two of those, Rules 8 and 12(b)(6), are Rules of general application to which all pleadings must comply.  Rule 9(b) sets a more stringent standard where, as in the case at bar, the plaintiff asserts causes of action sounding in fraud.

Under Rule 8, a complaint must "present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Under Rule 12(b)(6) a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); see also Braden v. Wal-Mart, 588 F.3d at 594.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Bell Atlantic, supra, 127 S.Ct. at 1969.  Rule 9(b) requires that "[i]n alleging fraud…, a party must state with particularity the circumstances constituting fraud … ."

Rules 8 and 12(b)(6) require that Plaintiffs succinctly state factual allegations sufficient fully to state a cause of action., A mere listing of the elements of a proffered cause of action is not sufficient to withstand dismissal.  The Rule 12(b)(6) standard "can be summed up thus:

stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough **facts** to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny,  515 F.3d 224, 234 (3rd Cir. 2008) (citing Twombly, 550 U.S. at 555, 127 S.Ct. 195. (emphasis added).)   A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557, 127 S.Ct. 1955.

In evaluating the sufficiency of a complaint, the court accepts as true for purposes of a motion to dismiss all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, supra, 515 F.3d at 234.   The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, supra, 550 U.S. at 555, 127 S.Ct. 1955.   The Court should not accept as true a complaint's bald assertions or legal conclusions.   In re Burlington Coat Factory Sec. Litigation, 114 F.3d 1410, 1429 (3d Cir. 1997).   The Court is to examine the pleading and disregard any unwarranted inferences or legal conclusions even those cast in the guise of factual allegations. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997).

The three-step pleading analysis is well-established.  See, Santiago v. Warminster Twp., 629 F.3d 121, 129-30 (3d Cir. 2010).  In Santiago, the Court held that:

> [T]o determine the sufficiency of a complaint, a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id.; see Askew v. R.L. Reppert, Inc., 902 F.Supp.2d 676, 681 (E.D. PA 2012) (once legal conclusions and other improper matter has been removed, the Court determines whether or not the remaining facts are "sufficient to show that the plaintiff has a 'plausible claim for relief.'" The application of the test is "'context-specific" and requires the court to draw on "its judicial experience and common sense".)

As detailed herein, Plaintiffs have not met the requisite pleading standards to make out its claims under ERISA and sounding in fraud.  Consequently, the Complaint should be dismissed.

## POINT II

## PLAINTIFFS' COUNTS III AND IV PURPORTING TO STATE ERISA CLAIMS MUST BE DISMISSED

Counts III and IV purport to state claims under ERISA.  Plaintiffs have not, however, alleged facts sufficient to support such claims.  In particular, the Plaintiffs have not alleged facts sufficient to meet the threshold requirement of showing that Ackeman was an ERISA fiduciary.  Nor have they alleged facts sufficient to show that any monies paid to Ackerman were the assets of any benefit plan or that Ackerman had any authority or responsibility with respect to the administration of the plan.  Having failed to plead facts sufficient to establish those ERISA foundational elements, the Complaint fails and should be dismissed.

ERISA is designed to protect "participants and beneficiaries of employee benefit plans by establishing standards of responsibility and conduct for fiduciaries of these plans." Askew v. R.L. Reppert, Inc., 902 F.Supp.2d at 684.  For purposes of ERISA, a fiduciary is defined as follows:

> (21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

In the case at bar, the Complaint does not allege any factual basis that could establish that Ackerman was a fiduciary.  Consequently, Counts III and IV of the Complaint should be dismissed.

### A.   Ackerman Is Not a Fiduciary and Any Fees Received Are Not Plan Assets Under ERISA.

In reaching the conclusion that Plaintiffs have not alleged facts sufficient to show that Ackerman is or was a fiduciary to the Plan, two of the three parts of the definition set forth in Section 1002(21)(A) (subsections (ii) and (iii)) are easily dispensed with.  Neither subsection applies to Ackerman – he is not alleged to have rendered any investment advice (subsection (ii)) and he is not alleged to have been involved with the administration of any plan (subsection (iii)).  As to subsection (i), Plaintiffs' Complaint can survive this Motion to Dismiss only with plausible allegations of fact showing that Ackerman "exercise[d] any discretionary authority or discretionary control respecting management of such plan or exercise[d] any authority or control respecting management or disposition of its assets."  Id. at § 1002(21)(A)(i).  As detailed below, the Complaint wholly fails to meet that standard.

The first step in performing the requisite analysis is to separate out factual allegations from legal conclusions and other non-factual statements that are inadequate to support the legal theories set forth in the Compliant.  See Askew v. R.L. Reppert, Inc., 902 F.Supp.2d at 681. Plaintiffs here cannot survive even the first step.  The Complaint fails to set forth factual allegations that could serve to bring Ackerman within the definition of a "fiduciary."  Even a cursory analysis of the paragraphs of Count IV that purport to establish Ackerman as a fiduciary for ERISA purposes show that they are nothing but legal conclusions that are not to be taken as true for purposes of this Motion.  Id.

> 71. As described above, Ackerman exercised discretionary authority and control over the payments made by the ABA/AMA Enrollees once he received them, retaining an excessive percentage of the Enrollee payments as a premium or finder's fee for securing coverage under the Plan and remitting an insufficient amount of the Enrollee payments to the Plan to secure coverage for the Enrollees.

72. In receiving Plan assets from the Enrollees and exercising discretionary control over those Plan assets for the purpose of enriching himself at the expense and disadvantage of the Enrollees, the Plan, and the Plan's participants, Ackerman assumed fiduciary duties of care and loyalty with respect to those payments, the ABA/AMA Enrollees, the Plan, and its participants within the meaning of ERISA § 3(21).

Paragraphs 71, 72 and 73 allege simply:  1) participants made payments to the Plan through Ackerman; 2) Ackerman remitted those Plan funds to the Plan; 3) Ackerman received a fee from Plan Enrollees; and 4) the fee was "excessive."  By stating in Paragraph 72 that "In receiving Plan assets from the Enrollees and exercising discretionary control over those Plan assets … , Ackerman assumed fiduciary duties of care and loyalty … ,"  Plaintiffs are stating a legal conclusion, not making factual allegations.[2]  Similarly, the pleading standard is not met by the bald allegation that Ackerman "assumed fiduciary duties of care and loyalty".  Askew v. R.L. Reppert, Inc., 902 F.Supp.2d at 681.  Plaintiffs have done nothing but state the legal conclusion that Ackerman assumed those duties.  That is not the factual recitation necessary to survive a Motion to Dismiss.  Id.

---

[2]  In any event, the New Jersey insurance code does not prohibit the collection of fees in connection with the placement of insurance.  Chapter 17B of Title 11 of the regulations promulgated pursuant to the Producer Licensing Act, N.J. State. Ann. §§ 17:22A-26, et seq. address fees that may be collected by insurance producers.  Neither the Producer Licensing Act nor the regulations promulgated thereunder require Atlantic to remit the entirety of the amount received from an enrollee to the Plan.  And neither do they prohibit Atlantic from retaining a portion of such amounts.  See id. at §§11:17A-2.3, -2.5, -2.6, -2.8, -4.1, -4.2, -4.5; § 11:17C-2.1(a)-(b).  On the contrary, the regulations clearly contemplate precisely such conduct by providing expressly that a producer is simply required to remit to an insurer only those funds entrusted to its care *for remittance to an insurer*; and funds not intended for that purpose are not required to be remitted.  The regulations contain the following guidance:

(a)      All premium funds shall be remitted to the insurer … within five business days after receipt of the funds **except as otherwise provided by any of the following**:

1. The insurance producer's contract with the insurer or written agreement with the insured.

Id. at§11:17C-2.2(a) (emphasis added).

Then, having done nothing more than state the conclusion that Ackerman is a fiduciary, Plaintiffs go on to state in Paragraphs 73 and 74 the legal conclusion that Ackerman breached his fiduciary duties and in doing so acted in "violation of ERISA."

> 73. Ackerman breached his duties of care and loyalty under ERISA §404(a)(1)(A)&(B) by, *inter alia,* (i) charging premiums to the ABA/AMA Enrollees that far exceeded the amount he remitted to the Plan; (ii) retaining excessive, windfall personal profits from the Enrollee payments that far exceeded his administrative cost in enrolling the ABA/AMA Enrollees and collecting and remitting their monthly premium payments; (iii) failing to disclose to the ABA/AMA Enrollees the actual cost to procure coverage under the Plan; and (iv) misrepresenting or failing to advise the Plan of the preexisting health conditions of the Enrollees, thereby preventing the Plan from exercising its right under Health Insurance Portability and Accountability Act of 1996 (HIPAA) to exclude coverage of catastrophic claims arising out of those preexisting conditions.

> 74. By the conduct described above, Ackerman engineered, exercised discretionary control over, and directly participated in transactions that diverted Plan assets to his personal account and for his personal gain in violation of ERISA §406(a) and §406(b) and therefore is liable to indemnify and make the Plan whole for losses incurred or to be incurred by the Plan.

Here again, the Complaint is wholly lacking. Saying in one Paragraph that Ackerman is a fiduciary, and then saying in the next that he breached his fiduciary duties falls far short of meeting the necessary pleading standards. The statement that Ackerman acted "in violation of ERISA §406(a) and §406(b)" is not factual and serves only as a bald legal conclusion.

For purposes of this Motion, the Court need not consider the legal conclusions as true. See Askew v. R.L. Reppert, Inc., 902 F.Supp.2d at 681. Once the legal conclusions are removed – as they must be for purposes of this Motion - there is virtually nothing left of the Plaintiffs' Complaint.

1776962v1

10

Even if, for purposes of this Motion, the Court were to give any credence to the allegations concerning the premium payments, the Complaint still would fail. "Ministerial tasks performed by one party also will not give rise to fiduciary duties as there is no discretionary power." Id. at 684. Moreover, in Askew, the Court dismissed a complaint brought under ERISA with virtually the same sort of allegations as made in the case before this Court. In Askew, the described the allegations as follows:

> Third-party plaintiffs aver that they contracted with both Kistler Tiffany and CalPAC for third-party defendants to "establish, administer, and maintain the Plans." Further, third-party plaintiffs broadly assert that third-party defendants "were instrumental in establishing, administering, and/or maintaining the Plans." However, the Third Party Complaint fails to aver any additional factual matter concerning the contractual relationship between third-party plaintiffs and Kistler Tiffany or CalPAC.

Id. at 684 – 85.

When the legal conclusions are set aside, the Plaintiffs' Complaint in this case does nothing more than was found to be deficient in Askew. With respect to the sufficiency of the allegations in Askew, the Court stated that:

> Given the minimal factual allegations concerning Kistler Tiffany and CalPAC, I cannot determine, or even draw reasonable inferences, concerning the nature of the contracts between third-party plaintiffs and Kistler Tiffany or CalPAC. Moreover, I am unable to ascertain the extent of any discretionary tasks performed by third-party defendants under their contract with third-party plaintiffs.

Id. at 685.

To use the words of the Askew Court, "minimal factual allegations" is an accurate, and perhaps even charitable, description of the Plaintiff's Complaint in this case. Here, the Complaint alleges that Acosta administered the Plan and does not even allege, as did the Plaintiffs in Askew, that Ackerman "established, administered and maintained" the Plan. In

1776962v1

11

contrast, Ackerman is portrayed as simply a third party with an arms-length relationship to the Plan. The Plaintiffs' Complaint is wholly insufficient to meet the standard for pleading allegations of fact that if taken as true would support a finding that Ackerman is a fiduciary. If Ackerman is not a fiduciary, then the theories of liability asserted in Plaintiffs' Complaint, which depend on fiduciary status, cannot be sustained.

Moreover, Plaintiffs' conclusory allegations that Ackerman "induced" breaches by Acosta will not stand. In their Complaint, Plaintiffs allege that:

> 63. Ackerman induced or encouraged Acosta to breach his fiduciary duties of care and loyalty to the Plan by soliciting Acosta to facilitate Ackerman's scheme to enroll the ABA/AMA Enrollees in the Plan and thereby allow Ackerman to gain ill-gotten and illegal windfall profits by selling the Plan's health insurance coverage to ineligible individuals.

> 64. At all times during which the ABA/AMA Enrollees were participating in the Plan, Ackerman was a party in interest to the Plan by virtue of his actual and/or beneficial ownership and control of one or more contributing employers to the Plan.

Those allegations are insufficient. "[S]ection 1132(a)(3) "does not authorize suit against 'nonfiduciaries charged solely with participating in a fiduciary breach.' … . Rather, there must be evidence that the non-fiduciary is a person in interest and has participated in a prohibited transaction with a fiduciary as defined in 29 U.S.C. § 1106." Id. at 688 (quoting Renfro v. Unisys Corporation, 671 F.3d 314, 325 (3d Cir.2011) (quoting Reich v. Compton, 57 F.3d 270, 284 (3d Cir.1995).) Indeed, as the Plan Administrator, Acosta had a fiduciary, non-delegable duty under ERISA to maintain the Plan's integrity. See 29 U.S.C. §1104(a)(1)-(2); Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund, 933 F. Supp. 1124 (D. Mass 1996).

The Complaint fares no better when it comes to the issue of plan assets. Plaintiffs allege:

> 65. The enrollment of the ABA/AMA Enrollees in the Plan and the Plan's provision of benefit coverage to them generated

windfall and ill-gotten profits to Ackerman in violation of ERISA §406.

> 70. If defendant Ackerman alleges and the Court determines that the ABA/AMA Enrollees were actual employees of ABA and AMA, then the amounts charged by Ackerman to them in order to participate in the Plan were assets of the Plan upon payment of those monies by the ABA/AMA Enrollees to Ackerman.

Plaintiffs' statement that payments by Plan enrollees to Ackerman should be treated as plan assets is nothing more than a legal conclusion that the Court should not credit for purposes of this motion. See Askew v. R.L. Reppert, supra, 902 F.Supp.2d at 681. Statements that Ackerman generated "windfall" and "ill-gotten gains" do not even rise to the level of legal conclusions and are nothing but inappropriate rhetoric. Stripped of its conclusory allegations and viewed through the Court's "judicial experience and common sense," Plaintiffs' Complaint plainly falls. Id.

## B.   Counts III and IV Fail to Plead Facts from Which a Prohibited Transaction May be Found.

In Counts III and IV, the Plaintiffs allege violations of ERISA §406 (Prohibited Transactions) (29 U.S.C. §1106) (hereinafter "Section 406"). Section 406 sets forth three categories of Prohibited Transactions, as follows:

> **(a) Transactions between plan and party in interest**
>
> Except as provided in section 1108 of this title:
>
> > (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
> >
> > > (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> > >
> > > (B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107(a) of this title.

**(b) Transactions between plan and fiduciary**

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

**(c) Transfer of real or personal property to plan by party in interest**

A transfer of real or personal property by a party in interest to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien which the plan assumes or if it is subject to a mortgage or similar lien which a party-in-interest placed on the property within the 10-year period ending on the date of the transfer.

29 U.S.C. §1106

The Complaint wholly fails to plead facts from which Prohibited Transaction may be found under any of the rules set forth in Section 406. Even if Plaintiffs had properly alleged, or had cause to allege, that Ackerman is a fiduciary for purposes of ERISA, they have not pled a cause of action under Section 406. Sub-sections (a) (addressing dealing between plan and party in interest) and (c) (transfers of property to plan by party in interest) obviously do not apply in this case. As to Sub-section (b), there were no transactions between the plan and Ackerman (again even if one were to assume for purposes of this part of the argument that he was a fiduciary.) The statements in Plaintiffs' Complaint that a particular statute was violated is not an allegation of fact that the Court may credit for purposes of this Motion.

The remainder of the Plaintiffs' ERISA Counts as to Ackerman also fail to meet the pleading standard. Plaintiffs allege:

> 66. As a direct result of Ackerman's actions, the Plan incurred losses in excess of $469,325.00 when it self-insured the coverage offered by the Plan to the ABA/AMA Enrollees.
>
> • • •
>
> 68. Ackerman is individually liable to restore to the Plan and Fund the cost of the coverage that the Plan impermissibly provided to the ABA/AMA Enrollees and/or the windfall and ill-gotten profits that Ackerman personally received by causing the Plan to provide valuable benefit coverage to the ABA/AMA Enrollees.

Plaintiffs allege only that, for a certain slice of time, and comparing the premiums paid in that time with the benefits paid out, the Plan suffered a loss of a certain amount of money. Nowhere do they trace the history of the premiums and benefits paid. They simply take a point of time and say they have a loss. From that they ask the Court to accept that they have a cause of action against Ackerman.

1776962v1

15

What Plaintiffs are seeking to do is to impose strict liability on Ackerman for an apparent monetary shortfall that is nothing more than a function of the nature of an insurance market.  The Plaintiffs do not allege that they gave refunds in years when the premiums exceeded the benefits. The Court and Ackerman are left to assume that in such years the insurance market works as just that – an insurance market; and does so well and efficiently.   When benefits paid exceed premiums, then it is something different.  It is no longer insuring risk for a premium (a premium which happens to be fixed by the insurer), there must be some sinister force at work.  The result of that thinking is Plaintiffs filing of a woefully deficient Complaint that smacks of being a strike suit.

The weakness of Plaintiffs' Compliant is highlighted by the paragraphs that start with the word "if".  These show that the Plaintiffs are grasping at straws and, in reality, do not even have a cognizable injury.  They are speculating on what cause of action they might have "if" certain non-parties pursue certain action.

> 67. If Horizon pursues a claim against the Plan alleging that the Plan, acting through Acosta, misrepresented to Horizon that the ABA/AMA Enrollees were eligible for coverage under the Plan and thereby caused Horizon to provide coverage to those ineligible individuals valued in excess of $5 million, the Plan will be required to incur legal fees and costs to assert whatever defenses it may have to such a claim and, if adjudged liable, may be required to pay damages to Horizon.

See Complaint at Par. 67.

Horizon is not a party, and there is no allegation that Horizon has taken, and may never actually take, the steps referred to in the Complaint.  Without admitting that Ackerman would have any liability in the event that Horizon were to take that action, Ackerman respectfully submits that the Plaintiffs do not have any cause of action prior to that time.  Whether or not Plaintiffs would have any cause of action – and they would not – is beside the point.  Plaintiffs

1776962v1

16

do not have a present cause of action based on their pondering a "what if" question.  The Rules of Civil Procedure at their most basic require that the Plaintiffs plead facts.  Ackerman, and the Court should not have to expend time and resources dealing with speculation.  Speculative statements, that begin with the word "if", are just that – speculative statements – they are not allegations of fact and cannot serve to save Plaintiffs' Complaint from dismissal.  Moreover, Plaintiffs' claims fail on ripeness grounds, claims are not fit for adjudication if they are used on future events that "may not occur as anticipated, or indeed may not occur at all."  <u>Texas v. United States</u>, 118 S. Ct. 1257, 1259 (1998) (citations omitted.)  The nebulousness of the complaint may also be a cover for a statue of limitations problem.  To the extent Plaintiffs are beyond the three year ERISA statute of limitations, their claims are barred, 29 U.S.C. §§1113(2).

These allegations simply do not state claims against Ackerman sufficient to survive a motion to dismiss.  Plaintiffs' plead conclusions as if they were facts.  The courts are uniform in their disapproval of this abusive form of pleading.  Ackerman should not be compelled to endure the burden and expense of litigation under these circumstances.  <u>See</u> Fed.R.Civ.P. 12(b)(6); <u>Collins v. County of Gloucester</u>, 2008 WL 1374213, *3 (D.N.J. 2008) (dismissing complaint; "plaintiffs' Complaint contains only conclusory labels and no facts to support their entitlement to relief … the Court is left to speculate as to the facts plaintiffs rely upon.").

## POINT III

## PLAINTIFFS' COUNTS VI AND VII SOUNDING IN FRAUD MUST BE DISMISSED

### A.    Plaintiffs Have Failed to Meet the Enhanced Pleading Standard for Counts VI and VII of the Complaint.

Counts VI and VII of the Complaint purport to state causes of action in common law fraud and common law negligent misrepresentation.  With respect to those Counts, the Plaintiffs must meet the enhanced pleading standards of Fed.R.Civ.P. 9(b).  Judged against the requisite standard, Plaintiffs' Complaint falls short and should be dismissed.

Rule 9(b) requires that "[i]n all allegations of misrepresentation [and] fraud … particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable."  See In re Suprema Specialties, Inc. Securities Litigation, 438 F.3d 256, 276 (3d Cir. 2006).  A fraud claim must set forth the "who, what, where and when" of the allegedly false representations.  Id.  The allegations must be stated with enough particularity to allow a defendant to know exactly:  who supposedly made the false statements; whether the statements were oral or in writing; who was present when they were made; where the statements were made and when they were made.  Id.

The "particularity" requirement of Rule 9(b) means that "at a minimum," plaintiffs must "support their allegations … with all the essential factual background that would accompany the first paragraph of any newspaper story … that is, the who, what, when, where, and how of the events at issue").  Id.; see also Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004) (a plaintiff must either set forth "the date, place, or time" of the alleged fraud, or "place the defendants on notice of the precise misconduct with which they are charged" through "some alternate means of injecting precision and some measure of substantiation into their allegations

of fraud."); see Naporano Iron & Metal Co. v. American Crane Corp., 79 F.Supp.2d 494, 511 (D.N.J. 1999) (to withstand dismissal, a Complaint sounding in fraud must contain precise allegations of the date(s) on which the alleged fraudulent statements were made; the time(s) at which the alleged fraudulent statements were made; the place(s) where the alleged fraudulent statement were made and must otherwise inject precision and substantiation into the pleading.)

Pleadings that contain "collectivized allegations against 'defendants' do not suffice.  Nor is Rule 9(b) satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" Id.; accord Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (same; affirming dismissal of fraud claim).

Strong public policy reasons exist for the heightened pleading requirements.  As noted by the Third Circuit in Suprema Specialties, that strong policy is "to give defendants notice of the claims against them, provide an increased measure of protection for their reputations, and reduce the number of frivolous suits brought solely to extract settlements."  438 F.3d at 270; see also (the "primary purpose" of the particularity requirement "is to afford the defendant fair notice of the plaintiff's claim and the factual ground upon which it is based," and to safeguard against "improvident charges of wrongdoing". Ross v. Bolton, 904 F.2d 819, 823 (2nd Cir. 1990).

Under New Jersey law, the essential elements for a cause of action in fraud are:  (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Gennari v. Weichart Co. Realtors, 148 N.J. 582, 610 (1997); Capano v. Borough of Stone Harbor, 530 F.Supp. 1254, 1264 (D.N.J. 1982).

As detailed above, in order to survive a motion to dismiss under Rule 9(b), the Plaintiffs' Complaint must allege with particularity **facts** sufficient to establish all of the elements of the cause of action. The Plaintiffs would have to assert factual allegations showing with particularity the who, what, when, where, and how of each of the elements. Suprema Specialties, Inc. Securities Litigation, supra, 438 F.3d at 276 ; Naporano Iron & Metal v. American Crane, supra, 79 F.Supp.2d at 511.

**(1)     Count VI Does Not Allege Specific Facts Sufficient to Support a Fraud Claim.**

Instead of the detailed showing that they were required to make, the Plaintiffs' Count VI offers only the following few conclusory statements as the heart of their Count VI fraud claim:

> 80. Ackerman intentionally misrepresented to the Plan and to the insurance companies that underwrote the Plan's medical, hospitalization, and prescription drug coverage that ABA and AMA were employers of bargaining unit employees so that Ackerman could generate windfall and ill-gotten personal profits by marketing and selling the Plan's health insurance coverage to ineligible individuals.

> 81. Ackerman knew that neither ABA nor AMA employed any bargaining unit employees and that the ABA/AMA Enrollees were not eligible for coverage under the Plan.

> 82. In reliance on Ackerman's representations, the Plan and the insurance companies that underwrote the Plan's medical, hospitalization, and prescription drug coverage, provided health benefits to the ABA/AMA Enrollees.

> 83. But for Ackerman's misrepresentations, the Plan and the insurance companies that underwrote that coverage would not have treated the ABA/AMA Enrollees as Participants in the Plan.

> 84. As a direct result of Ackerman's actions, the Plan incurred losses in excess of $469,325.00 when it self-insured the coverage offered by the Plan to the ABA/AMA Enrollees.

Those Paragraphs are nothing more than conclusory restatements of the elements of the cause of action, which this Court need not accept as true for purposes of this Motion. Moreover,

even if those allegations were to be taken as true, and Ackerman respectfully submits they should not, Plaintiffs would still be far short of meeting the pleading standards required by Rule 9(b).

Nowhere have Plaintiffs detailed exactly what representations were made, who made the representations, when they were made, the mode of communicating the representations, the context in which the representations were made and the circumstances surrounding the representations. Plaintiffs simply have not injected the requisite "precision and substantiation into the pleading." See Naporano Iron & Metal Co. v. American Crane Corp., 79 F.Supp.2d supra, 511.

The remaining Paragraphs of Count VI are nothing more than speculation and legal conclusions. Specifically:

> 85. If Horizon pursues a claim against the Plan alleging that the Plan, acting through Acosta, misrepresented to Horizon that the ABA/AMA Enrollees were eligible for coverage under the Plan and thereby caused Horizon to incur damages in excess of $5 million in providing coverage to those individuals, the Plan will be required to incur legal fees and costs to assert whatever defenses it may have to such a claim and, if adjudged liable, pay damages to Horizon.

> 86. Ackerman is individually liable to the Plan and Trust for all losses to the Plan arising from his fraudulent misrepresentation of the eligibility of the ABA/AMA Enrollees, including but not limited to the self-insured losses that the Plan and Fund have already incurred as well as any costs, fees and possible damages that the Plan may incur if Horizon asserts its claim against the Plan.

These paragraphs should not be considered as true for purposes of this Motion and should be disregarded by the Court.

**(2)    Count VII Does Not Allege Facts Sufficient to Support a Claim for Negligent Misrepresentation.**

In similar fashion, Plaintiffs' Count VII falls far short of meeting the pleading

requirements.   As with Count VI, the main allegations of Count VII are little more than a restatement of the elements of a cause of action.   Specifically:

> 88. Ackerman negligently or with reckless indifference to the Plan's interests, represented to the Plan that the ABA/AMA Enrollees were bargaining unit employees of ABA and AMA and that the ABA/AMA Enrollees were eligible to participate in the Plan solely in order to secure coverage for the ABA/AMA Enrollees when, in fact, neither ABA nor AMA employed any bargaining unit employees.

> 89.   The Plan justifiably relied upon Ackerman's representations when the Plan treated the ABA/AMA Enrollees as Participants in the Plan and communicated their eligibility for coverage to the various insurance companies that underwrote the Plan's coverage and/or self-insured coverage that the Plan provided to Participants, including the ABA/AMA Enrollees.

> 90. But for Ackerman's misrepresentations, the Plan would not have treated the ABA/AMA Enrollees as Participants in the Plan nor would it have represented their status as Participants to the insurance carriers that underwrote the Plan's medical, hospital, and prescription drug coverage.

> 91. As a direct result of Ackerman's actions, the Plan incurred losses in excess of $469,325.00 when it self-insured the coverage offered by the Plan to the ABA/AMA Enrollees.

> 92. If Horizon pursues a claim against the Plan alleging that the Plan, acting through Acosta, misrepresented to Horizon that the ABA/AMA Enrollees were eligible for coverage under the Plan and thereby caused Horizon to incur damages in excess of $5 million in providing coverage to those individuals, the Plan will be required to incur legal fees and costs to assert whatever defenses it may have to such a claim and, if adjudged liable, pay damages to Horizon.

To meet the requirement of Rule 9(b), the allegations in the Complaint must indicate the "date, place or time" of the fraud, or must have "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Poling v. K. Hovnanian Enters., 99 F.Supp.2d 502, 508 (D.N.J. 2000).   Plaintiffs' Count VII is nothing but "[v]ague or

conclusory allegations [that cannot] … survive a motion to dismiss."); Id.; see also Lum, supra, 361 F.3d at 217, 223-24; In re. Ins. Brokerage Antitrust Litig., 2007 U.S. Dist. LEXIS 73220 at *49.

Viewed objectively, Plaintiffs' Counts VI and VII fail to meet the requirement that fraud be pled with particularity.  It would be hard to imagine causes of action that are more conclusory allegations, and less justified, than those set out in the Plaintiffs' Complaint.  Nor can any of Plaintiffs' Counts be saved merely by incorporating any part of Paragraphs 1 through 48.  Those Paragraphs are themselves nothing more than conclusory statements and legal conclusions as to Ackerman's alleged status under ERISA, dressed up as allegations of fact.  They should not be considered as true for purposes of this motion.  The Rules of Court, controlling caselaw and public policy all mandate that Ackerman not be put through the expense and opprobrium of litigating fraud claims that are nothing more than bare recitations of the elements of the cause of action.

Ackerman respectfully submits that Counts VI and VII should be dismissed.

## CONCLUSION

For the reasons set forth herein, the motion should be granted, and the Complaint should be dismissed as against Defendant Lawrence Ackerman.

**DeCotiis, FitzPatrick & Cole, LLP**
*Attorneys for Defendant Lawrence Ackerman*


By: _____s/Russell J. Passamano, Esq._____
        Russell J. Passamano, Esq.


Dated:  April 10, 2015