NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UAW GROUP HEALTH & WELFARE PLAN AND THE UAW GROUP HEALTH & WELFRE PLAN<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ACOSTA; LAWRENCE ACKERMAN; WILLIAM J. BACHELER AND BACHELER & CO, P.C.,<br><br>Defendants. | Civil Action No. 14-6247 (SDW) (SCM)<br><br>**OPINION**<br><br>September 18, 2015 |

**WIGENTON**, District Judge.

Before this Court are Sergio Acosta, Lawrence Ackerman, William J. Bacheler and Bacheler & Co, P.C.'s ("Defendants") Motions to Dismiss the Plaintiffs' First Amended Complaint ("Motions to Dismiss") pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides the Motions to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant Bacheler's Motion to Dismiss is **DENIED** and Defendants Ackerman and Acosta's Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.**

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs are the Board of Trustees of the UAW Health and Welfare Plan and the UAW Health and Welfare Plan ("Plan") (collectively, "Plaintiffs"). The Plan was created in or about January 1, 2001, via an Agreement and Declaration of Trust ("Trust Agreement") by and between several labor unions[1] ("Union") and certain employers of the union members to facilitate collective bargaining and for the provision of health insurance and other welfare benefits, as permitted by ERISA and Section 302(c)(5) of the Labor Management Relations Act of 1947 ("Section 302(c)(5)"). (ECF. No. 6, Amended Complaint ("Am. Compl.") ¶ 1.) Defendants are Sergio Acosta, the Union's designated trustee on the Plan's Board of Trustee[2] and de facto administrator; Lawrence Ackerman, the principal of two companies, Atlantic Business Association, Inc. ("ABA") and Atlantic Medical Association, Inc. ("AMA"), who allegedly enrolled numerous ineligible employees in the Plan and damaged the Plan's interests for his own ends; and William J. Bacheler, CPA of Bacheler, P.C., who audited the Plan's financial statements from 2001 through October 11, 2011. (Am. Compl. ¶¶ 5, 8-11, 22-37.)

The Plan, acting through Acosta[3], accepted as health insurance plan participants certain union members associated with Ackerman's companies, ABA and AMA. (*Id.* ¶¶ 5-7, 23, 26.) Plaintiffs allege that Ackerman fraudulently extended coverage, and at an excessive monthly premium, to "individuals who were not employees of either company but who were willing to pay excessive monthly premiums to obtain comprehensive medical and hospitalization coverage provided by the Plan because they were otherwise unable to procure such coverage in the group or

---

[1] These include the Local Union 2326, International Union, United Automobile, Aerospace and Agricultural Workers of America.
[2] The Plan is administrated by two Trustees, one of whom is appointed by the Union and one of whom is appointed by the employers obligated to contribute to the Plan. (Am. Compl. ¶ 2.) Acosta was the Union's appointee.
[3] Acosta was an official of the Union during the relevant time period, and for some of that time, a salaried employee of the UAW.

individual insurance market due to serious, preexisting health conditions." (*Id.* ¶¶ 22-24.) After remitting the actual and applicable premium amount charged by the insurer to the Plan, Ackerman purportedly pocketed the difference. (*Id.*)

During this time, Ackerman also owned Pro-Tech Automotive, LLC, which was, at the time, a Participating Employer in the Plan. (*Id.* ¶ 25.) Plaintiffs allege that this relationship made Ackerman a party in interest to the Plan and that his enrollment of the ABA/AMA participants constitutes prohibited transactions in violation of Section 406 of the Employee Retirement Income Security Act ("ERISA"). (*Id.*)

Plaintiffs allege that Ackerman's impermissible use of the Plan's benefit coverage constituted fraud and negligent misrepresentation. (*Id.* ¶¶ 65, 88.) Plaintiffs also claim that Acosta breached his fiduciary duties under the Trust Agreement and under ERISA by allowing the ABA and AMA enrollees to participate in the Plan. (*Id.* ¶ 26.) According to the Complaint, Acosta knew or should have known the Union was required to contribute to the Plan for the cost of providing health benefits to these employees, which it failed to do. (*Id.* ¶¶ 41-44.) Lastly, Plaintiffs charge that Bacheler breached its professional duties to the Plan because it knew or should have known that the ABA and AMA enrollees were not eligible to participate in the Plan. (*Id.* at ¶ 45.)

Plaintiffs claim that from January 1, 2001 through June 30, 2011, the Plan was funded by group insurance contracts obtained from Oxford, Aetna, and Horizon Blue Cross and Blue Shield ("Horizon"), but became self-insured as of July 1, 2011. (*Id.* ¶¶ 20-21.) By letter dated October 13, 2011, Horizon demanded reimbursement from the Plan in the amount of $5,632,774 for losses it incurred from insuring the ineligible individuals enrolled by Ackerman. (*Id.* ¶ 37.)

As a result, Plaintiffs filed a six-count complaint on October 9, 2014 and added two more claims on February 9, 2015.  As to Acosta, Plaintiffs allege breach of trust agreement and ERISA fiduciary duties losses caused by enrollment of ABA/AMA enrollees (Count I); breach of trust agreement and ERISA failure to collect contributions owed for union enrollees (Count II); and co-fiduciary liability losses caused by enrollment of ABA/AMA enrollees (Count V). As to Ackerman, Plaintiffs allege ERISA § 502(c)(3) participant liability (Count III); breach of ERISA fiduciary duties/prohibited transactions (Count IV); common-law fraud (Count VI); and common law negligent misrepresentation (Count VII). Plaintiffs allege professional negligence against Bacheler (Count VI).

Each defendant filed separate motions to dismiss the amended complaint and Plaintiffs filed timely opposition.  (Dkt. No. 24-25, 28, 34-39.)

**LEGAL STANDARD**

*Motion to Dismiss*

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* at 1950.

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. *Id.* The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim

5

for relief.'" *Id.* at 211 (quoting *Iqbal,* 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips,* 515 F.3d at 234-35.)

Further, when a plaintiff sets forth fraud-based claims, those claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M&T Bank Corp.*, No. 09-cv-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiffs can satisfy this standard by alleging dates, times, places and other facts with precision. *Park*, 2010 WL 1032649, at *5.

**DISCUSSION**

    **I.    Claims against Defendant Sergio Acosta**

        ***a. Breach of trust agreement and ERISA fiduciary duties losses caused by enrollment of ABA/AMA enrollees ("The Horizon Claims") (Count I)***

Plaintiffs claim that they would suffer damages in excess of $5 million "[i]f Horizon pursues a claim against the Plan alleging that the Plan, acting through Acosta, misrepresented to Horizon that the ABA/AMA Enrollees were eligible for coverage under the Plan and thereby caused Horizon to incur damages. . . in providing coverage to those individuals. . ." (Compl. at ¶¶ 99-100). Plaintiffs, however, do not allege that Horizon has taken any action against the Plan

beyond issuing a demand letter or that the Plan has suffered any actual injury as a result of Horizon's claimed losses. A plaintiff must show that it has sustained discrete injury in fact that is concrete, imminent, and not hypothetical or a matter of conjecture. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs may have a cause of action for subrogation if Horizon does in fact actively seek and successfully collects the amount sought in reimbursement from Plaintiffs. That cause of action has yet to accrue at this juncture. Because Plaintiffs' Horizon claims are premature, Count I will be dismissed.

### b. Breach of trust agreement and ERISA failure to collect contributions owed for union enrollees ("The Union Contribution Claim") (Count II)

Plaintiffs claim that Acosta failed to cause the Union to fund the Plan, but they do not offer sufficient facts to support their claim. Particularly, Plaintiffs do not specify the amount of the Union's funding deficit, how many Union employees participated in the Plan, how the deficiency was calculated, who paid the premiums if the Union did not, or when the contributions should have been made. As such, this Court will dismiss the contribution claim alleged as Count II without prejudice. Plaintiffs may amend their complaint to include facts that demonstrate how the Plan suffered damages or losses as a result of the purportedly delinquent contributions from the Union within 30 days of the issuance of this opinion.

### c. Co-fiduciary liability losses caused by enrollment of ABA/AMA enrollees ("Breach of Fiduciary Duty") (Count V).

Plaintiffs allege that Acosta breached his fiduciary duty. By statute, only four classes of plaintiffs are authorized to bring suit under Section 502(a) of ERISA: the Secretary of Labor, plan fiduciaries, plan participants, and plan beneficiaries. 29 U.S.C. § 1132(a). As plan fiduciaries, the Plan's Board of Trustees has standing to sue Acosta for breach of fiduciary duty as it has in this

case. However, the Plan itself is not afforded standing to seek relief on a breach of fiduciary duty claim. Because the Plan is not statutorily authorized to seek recovery for breach of fiduciary duty, it is dismissed as a plaintiff as to Count V.

### II. Claims against Defendant Ackerman

#### a. Common-law fraud (Count VI)

Plaintiffs allege common law fraud in Count VI of the complaint. To properly allege a fraud claim, ". . . a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Moreover, a fraud claim must set forth the "who, what, where and when" of the allegedly false representation. *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256, 276 (3d Cir. 2006). Here, Plaintiffs do not allege, with specificity, the facts necessary to support a cause of action for common law fraud. The complaint merely recites conclusory statements of the elements of a fraud claim. As such, Count VI is dismissed without prejudice. Plaintiffs should amend their complaint to provide a sufficient factual basis as to what allegedly fraudulent representations were made, who made them, when they were made, the mode of communication in which they were made, the context in which the representations were made and the circumstances surrounding them.

#### b. Counts III, IV, and VII.

This Court finds that Counts III, IV, and VII, namely ERISA § 502(c)(3) participant liability, breach of ERISA fiduciary duties/prohibited transactions, and common law negligent misrepresentation, respectively, are sufficiently pled. Therefore, Ackerman's motion to dismiss those counts is denied.

### III. Claims against Defendant Bacheler

#### a. *Professional negligence (Count VIII)*

In Count VIII of the complaint, Plaintiffs accuse Bacheler of professional negligence. (Compl. ¶¶ 93-100.) Specifically, they allege that as an auditor of an ERISA plan, Bacheler was required to test the Plan's compliance with its eligibility provisions and that, had he done so, the Plan would have discovered that the ABA/AMA enrollees were not eligible to participate. (Compl. at ¶¶ 96-97.) As a result of this alleged negligence, Plaintiffs claim that they suffered damages from their ignorance of and failure to "collect over $900,000 in principal contributions from the Union." (*Id.* at ¶ 99.) While the pleadings scarcely illustrate how the Union's insufficient contributions can be attributed to Bacheler, this Court will deny Bacheler's Motion to Dismiss. Nonetheless, Plaintiffs should amend their Complaint to provide more facts regarding the causal relationship between Bacheler's alleged negligence as an auditor and the Union's deficient contributions.

Lastly, because this Court has determined that the Horizon claims are premature and cannot stand, Plaintiffs may not present, as proof of Bacheler's alleged professional negligence, their purported liability to Horizon.

### CONCLUSION

Defendant Bacheler's Motion to Dismiss is **DENIED.** Defendants Acosta and Ackerman's Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.** An appropriate order will accompany this opinion.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

cc:     United States Magistrate Judge Steven C. Mannion.