NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UAW GROUP HEALTH & WELFARE PLAN AND THE UAW GROUP HEALTH & WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> SERGIO ACOSTA, LAWRENCE ACKERMAN, WILLIAM J. BACHELER, and BACHELER AND COMPANY, P.C., <br><br> Defendants. | Civil Action No. 14-6247 (SDW) (CLW) <br><br> **OPINION** <br><br> March 26, 2021 |

**WIGENTON,** District Judge.

Before this Court are Sergio Acosta, Lawrence Ackerman, William J. Bacheler, and Bacheler and Company, P.C.'s ("Bacheler P.C.") (collectively, "Defendants") Motions to Dismiss Plaintiffs the Board of Trustees of the UAW Group Health & Welfare Plan and the UAW Group Health and Welfare Plan's (the "Plan") (together, "Plaintiffs") Third Amended Complaint ("TAC") pursuant to Federal Rules of Civil Procedure ("Rule") 8(a)(2), 9(b), 12(b)(1), and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motions are **DENIED**.

**I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY**

This action involves a dispute surrounding the allegedly fraudulent administration of health insurance benefits to ineligible participants under the Plan. The facts as alleged in the TAC are

1

summarized as follows. The Plan was created on or about January 1, 2001, via an Agreement and Declaration of Trust ("Trust Agreement") by and between Local Union 2326 (the "Union")[1] and various employers who employed individuals represented by the Union. (D.E. 81 ¶ 1.) The Trust Agreement was enacted for collective bargaining purposes, specifically to provide health benefits to eligible employees of the Participating Employers,[2] the Plan, and the Union as permitted under the Employee Retirement Income Security Act ("ERISA") as well as Section 302(c)(5) of the Labor Management Relations Act of 1947 ("Section 302(c)(5)"). (*Id.* ¶¶ 1, 15.)

Two Trustees administer the Plan under the Trust Agreement and Section 302(c)(5), including one appointed by the Union ("Union Trustee"). (*Id.* ¶ 2.) Defendant Sergio Acosta served as the Union Trustee from January 1, 2001 through approximately November 1, 2011. (*Id.* ¶ 5.) In his role, Acosta assumed and carried out various responsibilities such as (i) determining individuals' eligibility for benefits under the Plan, and (ii) collecting contributions to the Plan and paying its expenses.[3] (*Id.* ¶¶ 2, 6.) Under the Trust Agreement and pertinent collective bargaining agreements, Participating Employers must submit contributions and deductions to the Plan as well as "accurate remittance reports" at least once per month. (*Id.* ¶ 18.) Furthermore, the Union must "remit contributions to the Plan on behalf of its employees" at a rate, frequency, and manner equivalent to other Participating Employers. (*Id.*) Acosta allegedly knew that the Union failed to

---

[1] Local Union 2326 is part of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). (*See* D.E. 81 ¶ 1.)

[2] In relevant part, "Participating Employers" are employers that contribute to the Plan on behalf of its employees pursuant to the terms of the Trust Agreement and the Plan. (*See* D.E. 81 ¶ 16.) The Union is also a Participating Employer under the Trust Agreement. (*See id.* ¶ 18.) In addition, "Participants" are "actual employees of Participating Employers who meet the eligibility requirements of the Plan." (*Id.* ¶ 15.)

[3] Although Trustees may delegate their responsibilities to an Administrative Manager under the Trust Agreement, they did not elect an Administrative Manager from 2001 through 2011. (*Id.* ¶¶ 3, 6.) In addition to the responsibilities above, Trustees are permitted to inspect and copy certain employment records of Participating Employers that would reflect whether their contributions to the Plan were faithfully made. (*See id.* ¶ 21.)

meet its remittance obligations to the Plan from January 1, 2001 through March 2012, resulting in $720,000 in losses.  (*Id.* ¶ 53.)  Each year during this period, Acosta enrolled or caused the enrollment of at least eight Union employees for coverage under the Plan and paid their monthly premiums from the Plan's general assets.  (*Id.* ¶¶ 53–53.6.)

Defendant Lawrence Ackerman owned and served as the chief executive officer of Atlantic Business Association, Inc. ("ABA") and Atlantic Medical Association, Inc. ("AMA"), which were formed in 2001 and 2008, respectively.  (*Id.* ¶¶ 8, 25.)  Plaintiffs allege that Ackerman formed ABA and AMA "to provide medical insurance coverage to individuals who were not employees" of either sham corporation "who were willing to pay excess monthly premiums to obtain comprehensive medical and hospitalization coverage provided by the Plan" because they could not procure health insurance elsewhere given serious preexisting medical conditions.  (*Id.* ¶¶ 25, 30.)  Ackerman solicited Acosta in his role as Union Trustee to sign agreements that accepted the purported ABA/AMA employees for coverage under the Plan.  (*See id.* ¶¶ 26–29.)  Plaintiffs aver that Acosta accepted the so-called ABA/AMA employees (hereinafter, "ABA/AMA Enrollees") knowing that they were ineligible, or he negligently or recklessly facilitated their acceptance without considering whether they were eligible.  (*Id.* ¶ 46.)  Meanwhile, Ackerman "prepared and/or directed the preparation of [monthly] enrollment/eligibility reports" from January 2004 to September 2011 knowing that they contained false representations regarding the ABA/AMA Enrollees' eligibility status.  (*Id.* ¶¶ 34, 48.)  After remitting the actual and applicable premium amount charged by the insurer to the Plan, Ackerman pocketed the difference.  (*Id.* ¶¶ 25, 31–33.)

To offer medical and hospitalization benefits, the Plan contracted with various insurance providers from January 1, 2001 to June 30, 2011, in exchange for a monthly premium per Participant.  (*Id.* ¶ 22.)  Relevant here, the Plan contracted with Horizon Blue Cross and Blue

3

Shield of New Jersey ("HBCBS") from July 1, 2009 to June 30, 2011.  (*Id.* ¶ 37.)  Around May 2011, HBCBS increased the Plan's premiums for the following year due to "the unexpectedly high claims costs."  (*Id.* ¶ 23.)  As a result of the proposed increase, the Plan ended its contract with HBCBS as of June 30, 2011.  (*Id.* ¶ 24.)  On or about October 13, 2011, HBCBS informed the Plan that ABA/AMA Enrollees were ineligible participants and demanded losses for having provided them with health coverage.  (*Id.* ¶¶ 38–39.)  The Plan self-insured ABA/AMA Enrollees by paying their claims from July 1, 2011 through September 30, 2011.  (*Id.* ¶¶ 24, 40–41.)  The self-insured period ended following the Plan's investigation of HBCBS's demand, which revealed that ABA/AMA Enrollees were never eligible for coverage.  (*Id.* ¶ 40.)

Defendant William J. Bacheler, acting on behalf of Bacheler P.C. (together, "Bacheler Defendants"), was the Plan's independent auditor from roughly 2001 through October 2011.  (*Id.* ¶ 11.)  The Bacheler Defendants were obligated to: (i) examine the Plan's financial statements, transactions, books, and records; (ii) opine on whether documents included in the Plan's annual report reflected generally accepted auditing principles ("GAAP"); (iii) determine whether the Plan provided benefits to ineligible participants, and; (iv) identify and report "on the lack of financial controls" that may "give rise to fraud and other misappropriation of Plan assets" as well as transactions that could hinder the Plan's financial integrity.  (*Id.* ¶¶ 11, 91–92.)  Plaintiffs claim the Bacheler Defendants either knew, should have known, or negligently failed to discover that (i) the ABA/AMA Enrollees were ineligible Plan participants (*id.* ¶¶ 49, 96), and (ii) the Union failed to remit contributions as required under the Trust Agreement.  (*Id.* ¶¶ 58, 95.)

In the TAC, Plaintiffs maintain that they incurred a loss of $4.16 million from inflated premiums paid to insurance providers between July 1, 2004 to June 30, 2011, because the ABA/AMA Enrollees' serious preexisting health conditions drove up the premium cost.  (*Id.* ¶ 41.)

4

In addition, Plaintiffs aver that they incurred an additional $417,400.34 in losses from July 1, 2011 to September 30, 2011, when it self-insured the ABA/AMA Enrollees. (*Id.*)

This Court previously issued an opinion addressing Defendants' motions to dismiss the First Amended Complaint.[4] (D.E. 41.) Thereafter, pursuant to Magistrate Judge Cathy L. Waldor's order (D.E. 71), Defendants withdrew their motions to dismiss the Second Amended Complaint ("SAC") (D.E. 72; D.E. 74; D.E. 75), and this matter was administratively terminated pending an investigation in a parallel criminal case involving Acosta and Ackerman.[5] (D.E. 73; D.E. 76.) On August 3, 2020, Plaintiffs reopened this case and filed the TAC, which lodges six counts. (D.E. 78; D.E. 81.) As to Acosta, Plaintiffs allege breach of the Trust Agreement and ERISA fiduciary duties losses caused by enrollment of ABA/AMA Enrollees (Count I), and breach of the Trust Agreement and ERISA withholding of contributions owed for union enrollees (Count II). (D.E. 81 ¶¶ 59–71.) As to Ackerman, Plaintiffs allege participant liability under ERISA Section 502(a)(3) (Count III), common law fraud, and negligent representation (Counts IV–V). (*Id.* ¶¶ 72–89.) Lastly, as to the Bacheler Defendants, Plaintiffs allege professional negligence (Count VI). (*Id.* ¶¶ 90–98.)

Defendants filed three motions to dismiss the TAC. (D.E. 86; D.E. 87; D.E. 106.) Plaintiffs opposed (D.E. 94; D.E. 95; D.E. 115); Acosta and the Bacheler Defendants replied (D.E. 101; D.E. 102). With this Court's permission, Plaintiffs submitted sur-replies. (D.E. 110; D.E. 111.)

## II.   LEGAL STANDARDS

An adequate complaint must be "a short and plain statement of the claim showing that the

---

[4] Aspects of this Court's prior decision are discussed throughout Section III below.

[5] Ackerman pleaded guilty to one count of knowingly and intentionally executing a scheme to defraud HBCBS in connection with the delivery of or payment for health care benefits and services. (D.E. 81-4 at 2, 13.) Acosta pleaded guilty to one count of theft, embezzlement, and conversion of money and funds of an employee welfare benefit fund. (D.E. 81-6 at 2, 11.) All pin cites to Docket Entry Numbers 81-4 and 81-6 refer to the CM/ECF pagination generated in the upper-righthand corner.

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555). As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570).

Pursuant to Rule 9(b), plaintiffs alleging fraud must "meet a heightened pleading standard by 'stat[ing] with particularity the circumstances constituting fraud[.]'" *N.Y.C. Emps.' Ret. Sys. v. Valeant Pharm. Int'l, Inc.*, No. 18-032, 2018 WL 4620676, at *2 (D.N.J. Sept. 26, 2018) (quoting Fed. R. Civ. P. 9(b)). Plaintiffs can satisfy this heightened standard and place the defendant on notice of the "'precise misconduct with which [it is] charged'" by alleging dates, times, places,

6

and other facts with precision. *Park v. M & T Bank Corp.*, No. 09-2921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010). Furthermore, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Finally, a motion to dismiss under Rule 12(b)(1) may present either a facial or factual attack to a court's subject matter jurisdiction. "A facial attack contests the sufficiency of the complaint because of a defect on its face, whereas a factual attack asserts that the factual underpinnings of the basis for jurisdiction fail to comport with the jurisdictional prerequisites." *Halabi v. Fed. Nat'l Mortg. Ass'n*, No. 17-1712, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (internal quotations omitted). When reviewing facial attacks, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). In contrast, with a factual attack, "a court may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

### III. DISCUSSION

#### A. Acosta's Motion to Dismiss[6]

##### i. Count I: Breach of Trust Agreement and ERISA Fiduciary Duties Losses Caused by Enrollment of ABA/AMA Enrollees

Acosta requests dismissal of Count I pursuant to Rule 12(b)(1) on the ground that Plaintiffs

---

[6] As a preliminary matter, this Court rejects Acosta's argument that the statute of limitations bars Plaintiffs' ERISA claims. (*See* D.E. 86-4 at 8–11.) Although this action was administratively dismissed pending a parallel criminal investigation (*see* D.E. 73; D.E. 76), Plaintiffs did not add new defendants or claims in the TAC. Rather, the TAC includes two fewer counts than the SAC. (*Compare* D.E. 81 (lodging six counts), *with* D.E. 44 (asserting eight counts).) Accordingly, Acosta's reliance on *Walsh Securities Incorporated v. Cristo Property Management Limited*, is inapposite. No. 97-3496, 2006 WL 166491 (D.N.J. Jan. 23, 2006) (finding that equitable tolling did not apply to defendants that were previously known but added *after* the reinstatement of an administratively terminated action). Here, the administrative termination explicitly contemplated future reinstatement (*see* D.E. 73; D.E. 76) and was merely a function that removed the case from this Court's active docket. *See Baglione v. Clara Maass Med. Ctr., Inc.*, No. 99-4069, 2006 WL 2591119 (D.N.J. Sept. 8, 2006) (holding that administrative termination tolled the statute of

lack standing for failure to allege an injury in fact. (D.E. 86-4 at 15–17.) In addition, Acosta argues that Count I must be dismissed under Rule 12(b)(6) because Plaintiffs fail to allege losses the Plan sustained by insuring ineligible participants. (*Id.* at 19–22.)

A federal court's jurisdiction under Article III of the United States Constitution is limited "to cases and controversies 'which are appropriately resolved through the judicial process.'" *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Aichele*, 757 F.3d at 357 (citing *Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007)).

Previously, this Court dismissed Count I against Acosta because Plaintiffs' alleged injury—consisting of HBCBS's $5 million demand for reimbursement from the Plan—was premature as HBCBS never sought to collect on its demand. (D.E. 41 at 6–7.) Although Acosta admits Plaintiffs no longer "alleg[e] that the Plan faces liability to [HBCBS]" (D.E. 86-4 at 8, 16), his arguments overlook allegations that demonstrate an injury in fact for pleading purposes, including losses of: (i) $4.16 million in excess premiums paid by the Plan to cover ineligible ABA/AMA Enrollees with serious preexisting medical conditions; and (ii) $417,400.34 the Plan

---

limitations) (citing *Penn West Associates, Inc. v. Cohen*, 371 F.3d 118 (3d Cir. 2004)). As noted by Plaintiffs, it is nonsensical to foreclose their day in court because of criminal proceedings that essentially halted this matter. (*See* D.E. 95 at 24 n.5.) For these reasons, the Bacheler Defendants' identical statute of limitations argument as to Plaintiffs' professional negligence claim is rejected. (*See* D.E. 87-1 at 19–22; *Compare* D.E. 44 ¶¶ 97–105 (alleging, in the SAC, a professional negligence claim against the Bacheler Defendants), *with* D.E. 81 ¶¶ 90–98 (same).)

Furthermore, this Court will not entertain arguments asserted only in Acosta and the Bacheler Defendants' respective reply briefs. (*See* D.E. 102 at 8 (arguing that irrespective of the administrative termination issue, any violations prior to October 9, 2008 are time-barred by ERISA's six-year limitations period); D.E. 101 at 10 (referencing an unspecified New Jersey law purportedly intended to prevent Plaintiffs' claims)); *see e.g.*, *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.") (quoting *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J.1999)).

paid to self-insure ineligible ABA/AMA Enrollees after it terminated its contract with HBCBS.[7] (D.E. 81 ¶¶ 24, 41, 63.) Plaintiffs claim that these damages arose in part because as Union Trustee, Acosta had a duty to investigate the ABA/AMA Enrollees' eligibility and breached his fiduciary duties by "knowingly or recklessly facilitating" their enrollment for coverage under the Plan. (*Id.* ¶¶ 61–62.) These purported injuries are plausible, not speculative, and sufficient to withstand Acosta's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

### ii. Count II: Breach of Trust Agreement and ERISA Withholding of Contributions Owed for Union Enrollees

Under Count II, Plaintiffs seek to hold Acosta liable for failing to cause the Union to contribute to the Plan. (D.E. 81 ¶¶ 65–71.) In its prior opinion, this Court dismissed Count II for failure to plead facts demonstrating the Plan's damages or losses from the delinquent Union contributions.[8] (D.E. 41 at 7.) Acosta avers that he cannot be liable under Count II because Plaintiffs do not allege how the Plan's deficiency was calculated and who paid the premiums in place of the Union. (D.E. 86-4 at 22–25.)

Again, Acosta ignores allegations that support Plaintiffs' claim. The TAC asserts that Acosta enrolled at least eight Union employees for coverage under the Plan each year from January 1, 2001 through March 31, 2012. (D.E. 81 ¶¶ 53–53.6 (providing the yearly number of Union enrollees, the monthly premium rate, and the amount Acosta allegedly paid on behalf of the Union enrollees from the Plan).) Plaintiffs allege that the Union failed to remit contributions to the Plan

---

[7] Plaintiffs plausibly plead that the Plan paid inflated premiums in exchange for health coverage because the ABA/AMA Enrollees drove up medical claims due to their serious preexisting health conditions. (*See* D.E. 81 at ¶ 22 (alleging that "[t]he monthly premium . . . was determined in part by the claims paid by [ ] [the] insurance provider"); *see id.* ¶ 41 (claiming that "[t]he Plan experienced severely adverse claims . . . due to the serious health conditions suffered by the [ineligible] ABA/AMA Enrollees, causing the Plan to incur losses in the form of inflated insurance premiums paid to the [insurance providers]").)

[8] For example, the allegations did not include how the Union's deficiency was calculated, who paid the premiums in place of the Union, the number of Union employees who participated in the Plan, and when the Union's contributions were due. (D.E. 41 at 7.) As noted below, the TAC adequately addresses these prior pleading deficiencies.

9

totaling $720,000, which, pursuant to the Trust Agreement, were calculated at the same rate and in the same manner as other Participating Employers. (*Id.* ¶ 53.) Despite Acosta's contention that Participating Employers paid the Union's contributions, thus bypassing losses to the Plan (D.E. 86-4 at 23, 25), Plaintiffs clearly claim that Acosta paid the Union's contributions "out of the Plan's general assets." (D.E. 81 ¶¶ 53.1–53.6.) Relatedly, in connection with his guilty plea, Acosta admitted that he withheld Union premiums owed to the Plan. (*Id.* ¶ 54; D.E. 81-6 at 11 ¶ 3.) The Union also admitted, by way of a Tolling Agreement with the Plan, that it did not make contributions to the Plan for at least part of the period in question. (D.E. 81 ¶¶ 56–57 (citing D.E. 81-7).) For these reasons, Acosta's motion to dismiss is **DENIED**.[9]

### B. The Bacheler Defendants' Motion to Dismiss

Plaintiffs seek to hold the Bacheler Defendants liable for professional negligence[10] in connection with their failure to (i) identify contributions the Union owed to the Plan and (ii) determine whether the ABA/AMA Enrollees were eligible for coverage under the Plan. (D.E. 81 ¶¶ 90–98.) This Court denied the Bacheler Defendants' motion to dismiss the same claim lodged in the First Amended Complaint; however, Plaintiffs were encouraged to expand on the causal connection between the Bacheler Defendants' alleged negligence and the Union's deficient contributions in an amended pleading. (D.E. 41 at 9.)

---

[9] This Court need not address Acosta's argument with respect to Rule 9(b) (*see* D.E. 86-4 at 26) because Plaintiffs do not bring a claim for fraud against Acosta. (D.E. 94 at 20–21.) In addition, because only the Board of Trustees seek relief on behalf of the Plan in the claims brought against Acosta (D.E. 81 ¶¶ 64, 71), this Court need not discuss his argument as to the Plan's ability to sue under ERISA, 29 U.S.C. § 1132(a). (D.E. 86-4 at 28.) Furthermore, the Bacheler Defendants' motion to dismiss is similarly denied to the extent they join in Acosta's arguments addressed in Section III.A related to Plaintiffs' standing and damages. (*See, e.g.*, D.E. 87-1 at 2 n.1.)

[10] To establish a claim for professional negligence, plaintiffs must assert "(1) the existence of a relationship between the parties creating a duty of care[;] (2) a breach of that duty; and (3) proximate causation between said breach and any damages suffered by the party asserting the claim." *Hanson Eng'g, Inc. v. Ascher*, No. 07-2651, 2008 WL 1782392, at *3 (D.N.J. Apr. 18, 2008). The Bacheler Defendants only contest whether Plaintiffs adequately allege the third prong. (*See generally* D.E. 87-1; D.E. 101.)

Plaintiffs aver that under ERISA, an annual audit report from an independent auditor must be filed by all employee benefit plans, which includes an assessment of whether a plan's financial statements conform with GAAP. (D.E. 81 ¶¶ 11, 91.) Plaintiffs maintain that as the Plan's auditor, the Bacheler Defendants were required to investigate and report any prohibited transactions conducted by the Plan and review internal controls to ensure the enrollment of eligible participants. (*Id.* ¶¶ 11, 92.) It is further alleged that the Union's failure to remit contributions to the Plan would have constituted a prohibited transaction under ERISA Section 406(a) and (b). (*Id.* ¶ 19.) These additional allegations strengthen the causal connection between the Bacheler Defendants' purported failure to detect the Union's missing contributions and Plaintiffs' claimed damages. The professional standards allegedly governing the Bacheler Defendants also make it plausible that they either knew or should have known the Plan was not providing coverage to eligible employees of ABA and AMA. (*See id.* ¶¶ 11, 91–92, 96.)

The Bacheler Defendants' arguments—that they could not compel contributions from the Union or that they were not required to determine participants' health status, medical history, or future medical claims—miss the mark. (D.E. 87-1 at 13–16; D.E. 101 at 4, 7.) Nor do Plaintiffs contend that the Bacheler Defendants caused the Union's failure to remit contributions (*see* D.E. 87-1 at 11, 13); rather, it is the purported failure to *identify* the Union's missing contributions under the allegedly operative professional standards. Accordingly, the Bacheler Defendants should not concern themselves with Plaintiffs' choice to forgo a claim against the Union.[11] (*See id.* at 13; D.E. 101 at 5.) Because Plaintiffs have satisfied their burden at the pleading stage, the Bacheler

---

[11] To the extent the Bacheler Defendants argue that the Union is an indispensable party (*see* D.E. 101 at 5), this issue need not be addressed because it is mentioned only passively in reply to Plaintiffs' opposition. *See, e.g.*, *D'Alessandro*, 2007 WL 130798, at *2.

11

Defendants' motion to dismiss is **DENIED**.[12]

### C. Ackerman's Motion to Dismiss

Finally, Ackerman filed a *pro se* motion to dismiss the TAC.[13] (D.E. 106.) Relevant here, a party seeking to assert a claim for common law fraud must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

This Court previously dismissed a claim for common law fraud against Ackerman because Plaintiffs failed to allege facts with the required specificity, including what allegedly fraudulent representations were made, who made them and when, the method of communication, and the surrounding context. (D.E. 41 at 8.) These deficiencies are cured in the TAC. Plaintiffs allege that from January 2004 through September 2011, Ackerman "prepared and/or directed the preparation of" monthly enrollment eligibility reports for ABA and AMA that misrepresented employees' eligibility for coverage under the Plan. (*See, e.g.*, D.E. 81 ¶¶ 34, 48.) Ackerman allegedly knew that these reports contained false eligibility statements and intended the Plan to rely on this inaccurate information. (*Id.*) Plaintiffs represent that they indeed relied on Ackerman's false eligibility reports to provide health coverage to ABA/AMA Enrollees and that they were damaged as a result. (*Id.* ¶¶ 34, 36.) Moreover, by way of his 2018 plea agreement,

---

[12] At this juncture, Plaintiffs need not explain their precise loss calculation for the period in which the Plan self-insured ABA/AMA Enrollees. (*See* D.E. 87-1 at 17.) Moreover, even if the Bacheler Defendants did not conduct an audit for the 2011 fiscal year following their termination, it remains plausible that their previous failures to identify delinquent Union contributions caused the Plan to incur losses during the self-insured period. (*See id.* at 18.)

[13] Because this Court previously upheld Plaintiffs' claims against Ackerman for ERISA § 502(c)(3) participant liability and negligent misrepresentation (D.E. 41 at 8), the following discussion pertains to Plaintiffs' claim for common law fraud only. To the extent Ackerman avers that Plaintiffs lack standing because the Plan did not suffer damages, this argument has been addressed and denied in Section III.A.

Ackerman admitted that he formed ABA and AMA as shell companies to defraud HBCBS into providing health benefits to so-called employees by falsifying their eligibility.[14] (*Id.* ¶¶ 43–44; D.E. 81-4 at 12–13 ¶¶ 1e, 2.) Ackerman apparently operated this scheme to pocket the excess premiums he charged ABA/AMA Enrollees. (D.E. 81 ¶¶ 25, 30–33, 45; *see id.* ¶ 34.) Accordingly, Ackerman's motion to dismiss and his request for legal fees is **DENIED**.[15]

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Cathy L. Waldor, U.S.M.J.
            Parties

---

[14] Although this Court's review of the plea agreement reflects that Ackerman only pleaded guilty to defrauding HBCBS, Plaintiffs also claim that he admitted to defrauding the Plan. (*Compare* D.E. 81-4 at 12–13, ¶¶ 1e, 2, *with* D.E. 81 ¶¶ 43–44.) For pleading purposes only, this Court accepts that Ackerman's admission, as it relates to HBCBS, plausibly supports that he simultaneously defrauded the Plan. (*See* D.E. 81 ¶¶ 34, 36, 43–44.)

[15] In addition, while this Court views Ackerman's *pro se* motion liberally, his remaining arguments are premature at the motion to dismiss stage. (*See, e.g.*, D.E. 106 at 3–4 (claiming that Plaintiffs' allegations regarding the ABA/AMA Enrollees' preexisting medical conditions have no factual basis).) Ackerman may deny any allegations he sees fit in answering the TAC.