UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOARD OF TRUSTEES, OF THE UAW GROUP HEALTH & WELFARE PLAN, *et al* <br><br> Plaintiffs, <br><br> v. <br><br> SERGIO ACOSTA, *et al* <br> Defendants. | Civil Action No. 14-6247 (JXN) (CLW) <br><br> OPINION |

**NEALS**, District Judge:

This matter comes before the Court upon the filing of three Motions to Dismiss: (1) Plaintiffs, the Board of Trustees of the UAW Group Health & Welfare Plan (the "Trustees") and the UAW Group Health & Welfare Plan (the "Plan") (collectively "Plaintiffs") Motion to Dismiss Defendant Sergio Acosta's ("Acosta") Counterclaim [ECF No. 150]; (2) Local Union 2326, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union") Motion to Dismiss William J. Bacheler and Bacheler and Company, P.C's (the "Bacheler Defendants") Third-Party Complaint [ECF No. 164]; and (3) the Union's Motion to Dismiss Acosta's Third-Party Complaint [ECF No. 165]. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiffs' Motion to Dismiss Acosta's Counterclaim against Plaintiffs at ECF No. 150 is **GRANTED**; the Union's Motion to Dismiss the Bacheler Defendants' Third-Party Complaint against the Union at ECF No. 164 is **GRANTED**; and the Union's Motion to Dismiss Defendant Sergio Acosta's Third-Party Complaint against the Union at ECF No. 165 is **GRANTED**.

I.  **FACTUAL BACKGROUND**

As the parties are intimately familiar with the facts of this case, the Court will only address those relevant to the present motions.[1] This action involves a dispute surrounding the allegedly fraudulent administration of health insurance benefits to ineligible participants under the Plan. The facts as alleged in the Third Amended Complaint ("TAC") are summarized as follows. The Plan was created on or about January 1, 2001, via an Agreement and Declaration of Trust ("Trust Agreement") by and between the Union and various employers who employed individuals represented by the Union. *See* TAC ¶ 1, ECF No. 81. The Trust Agreement was enacted for collective bargaining purposes, specifically to provide health benefits to eligible employees of the Participating Employers, the Plan, and the Union as permitted under the Employee Retirement Income Security Act ("ERISA") as well as Section 302(c)(5) of the Labor Management Relations Act of 1947 ("Section 302(c)(5)"). *Id.* ¶¶ 1, 15.

Two Trustees administer the Plan pursuant to the Trust Agreement and Section 302(c)(5), one of whom is appointed by the Union ("Union Trustee"). *Id.* ¶ 2. Defendant Sergio Acosta served as the Union Trustee from January 1, 2001, through approximately November 1, 2011. *Id.* ¶ 5. In his role, Acosta assumed and carried out various responsibilities such as (i) determining individuals' eligibility for benefits under the Plan, and (ii) collecting contributions to the Plan and paying its expenses. *Id.* ¶¶ 2, 6. Under the Trust Agreement and pertinent collective bargaining agreements, Participating Employers must submit contributions and deductions to the Plan as well as "accurate remittance reports" at least once per month. *Id.* ¶ 18. Furthermore, the Union must "remit contributions to the Plan on behalf of its employees" at a rate, frequency, and manner equivalent to other Participating Employers. *Id.* Acosta allegedly knew that the Union failed to

---

[1] For a fuller recitation of the facts, please review the Court's March 26, 2021 Opinion, ECF No. 118.

meet its remittance obligations to the Plan from January 1, 2001, through March 2012, resulting in $720,000 in losses. *Id.* ¶ 53. Each year during this period, Acosta enrolled or caused the enrollment of at least eight Union employees for coverage under the Plan and paid their monthly premiums from the Plan's general assets. *Id.* ¶¶ 53–53.6.

Defendant William J. Bacheler, acting on behalf of Bacheler P.C. (together, the "Bacheler Defendants"), was the Plan's independent auditor from roughly 2001 through October 2011. *Id.* ¶ 11. The Bacheler Defendants were obligated to: (i) examine the Plan's financial statements, transactions, books, and records; (ii) opine on whether documents included in the Plan's annual report reflected generally accepted auditing principles ("GAAP"); (iii) determine whether the Plan provided benefits to ineligible participants; and (iv) identify and report "on the lack of financial controls" that may "give rise to fraud and other misappropriation of Plan assets" as well as transactions that could hinder the Plan's financial integrity. *Id.* ¶¶ 11, 91–92. Plaintiffs claim that the Bacheler Defendants either knew, should have known, or negligently failed to discover that (i) the ABA/AMA Enrollees were ineligible Plan participants (*id.* ¶¶ 49, 96), and (ii) that the Union failed to remit contributions as required under the Trust Agreement. *Id.* ¶¶ 58, 95.

Plaintiffs maintain that they incurred a loss of $4.16 million from inflated premiums paid to insurance providers between July 1, 2004, to June 30, 2011, because the ABA/AMA Enrollees' serious preexisting health conditions drove up the premium cost. *Id.* ¶ 41. In addition, Plaintiffs aver that they incurred an additional $417,400.34 in losses from July 1, 2011, to September 30, 2011, when it self-insured the ABA/AMA Enrollees. *Id.*

This Court previously issued an opinion addressing Defendants' motions to dismiss the First Amended Complaint. ECF No. 41. Thereafter, pursuant to Magistrate Judge Cathy L. Waldor's order (ECF No. 71), Defendants withdrew their motions to dismiss the Second Amended

3

Complaint (ECF Nos. 72, 74, 75), and this matter was administratively terminated pending an investigation in a parallel criminal case involving Acosta and Defendant Lawrence Ackerman. *See* ECF Nos. 73, 76. On August 3, 2020, Plaintiffs reopened this case and filed the TAC, which lodges six counts. ECF Nos. 78, 81. As to Acosta, Plaintiffs allege breach of fiduciary duties under the Trust Agreement and ERISA, causing losses due to the coverage of ABA/AMA Enrollees (Count I); and breach of the Trust Agreement and ERISA withholding of contributions owed for union enrollees (Count II). ECF No. 81 ¶¶ 59–71. As to Ackerman, Plaintiffs allege participant liability under ERISA Section 502(a)(3) (Count III), common law fraud, and negligent representation (Counts IV–V). *Id.* ¶¶ 72–89. Lastly, as to the Bacheler Defendants, Plaintiffs allege professional negligence (Count VI). *Id.* ¶¶ 90–98.

On September 18, 2020, Acosta filed a motion to dismiss the TAC, which was ultimately denied by this Court in an Opinion and Order issued March 26, 2021. *See* ECF Nos. 118, 119.[2]

On April 16, 2021, Acosta timely filed an Answer, Separate Defenses, Designation of Trial Counsel, Crossclaim, Counterclaim, and Third-Party Complaint. *See* ECF No. 125. In his Counterclaim, Acosta seeks indemnification and "contribution from the [Plaintiff Trustees] with respect to any damages that the Court might award pursuant to [Count II of the TAC]." *Id.* at 20 ¶¶ 16-18.[3] On June 24, 2021, Plaintiffs moved to dismiss Acosta's Counterclaim, arguing that ERISA contains no implied right of contribution or indemnification. *See* ECF No. 150-1.

In his Third-Party Complaint against the Union, Acosta similarly seeks to "recover contribution, indemnification, or both, in the event that the Court determines that he is in any way liable to the Plan." ECF No. 125 at 22 ¶ 10. The Union has moved to dismiss the Third-Party

---

[2] The Honorable Susan D. Wigenton, U.S.D.J., specifically rejected Acosta's argument that he cannot be held liable under Count II. *See* ECF No. 118 at 9-10.
[3] For sake of clarity, when citing to the parties' motion papers, the Court cites to the page number listed in the ECF header.

Complaint, contending that "the Courts within the Third Circuit, as well as Courts in other circuits, have overwhelming[ly] found that contribution or indemnification was not a remedy under ERISA, federal common law or otherwise, where a non-fiduciary participated in a fiduciary breach." ECF No. 165-1 at 8.

On April 19, 2021, the Bacheler Defendants filed an Answer, Affirmative Defenses to Plaintiffs' Third Amended Complaint, Crossclaims, and Third-Party Complaint. ECF No. 126. In the Bacheler Defendants' Third-Party Complaint against the Union, they seek damages on the theory of indemnification, contribution and unjust enrichment based upon vicarious liability of the actions of its agent, Defendant Acosta in his capacity as a Union Official. *Id.* The Union moves to dismiss the Third-Party Complaint, contending that (1) the Union is not responsible for Acosta's *ultra vires* acts, (2) the Bacheler Defendants do not have standing to bring an action under ERISA, and (3) the Bacheler Defendants have failed to state a viable cause of action for claims of contribution, indemnification, and unjust enrichment. *See* ECF No. 164-1.

## II.   LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### III.  DISCUSSION

**A. Plaintiffs' Motion to Dismiss Acosta's Counterclaim [ECF No. 150].**

Acosta seeks contribution and indemnification from the Trustees for failing to compel the Union to pay its alleged debt to the Plan. *See* Counterclaim, ECF No. 125 at 20 ¶ 16. Plaintiffs move to dismiss Acosta's Counterclaim, contending that "[n]o federal or state law exists that supports a claim for contribution and/or indemnity against a party with no responsibility for the act for which the party asserting that claim is liable." ECF No. 150-1 at 6. In response, Acosta asks this Court to develop a common law cause of action for contribution and/or for indemnity arising under ERISA that will allow Acosta, a former fiduciary to the Plan, to sue the current Trustees for their alleged failure to pursue contributions owed by the Union. *See* ECF No. 162 at 12. Plaintiffs replied, arguing that Congress did not intend for the federal courts to engraft common

law causes of action for contribution or indemnity arising under ERISA. *See* ECF No. 163 at 2. Plaintiffs further contend that Acosta's Counterclaim does not assert a viable claim for common law contribution or indemnity and should be dismissed by the Court without addressing whether ERISA recognizes an implied right of contribution, indemnification, or both. *Id.*

To provide context for this motion to dismiss, it is necessary to provide a brief synopsis of the parties' pleadings. In the TAC, Plaintiffs allege that Acosta illegally caused the Union not to pay contributions it owed to the Plan for at least eight Union employees and affiliates of the Union that he enrolled in the Plan during his tenure as a Union Trustee of the Plan. *See* ECF No. 81 ¶ 51. In his Counterclaim, Acosta does not allege that the current Trustees, whose tenure on the Board postdates Acosta's tenure, contributed to the actions he is alleged to have committed in the TAC. Instead, Acosta claims, in other words, that the Trustees have a fiduciary duty under ERISA, to aggressively pursue the Union to recover the Plan's funding deficiency caused by Acosta's breach. *See* ECF No. 125 at 20 ¶ 16.

Despite all the spilled ink, the question before the Court is relatively straightforward: whether the Court recognizes an implied right of contribution and/or indemnification under ERISA that would allow Acosta's Counterclaim to survive Plaintiffs' motion to dismiss. The Court must answer in the negative. As Acosta correctly notes, "neither the U.S. Supreme Court nor the U.S. Court of Appeals for the Third Circuit has decided whether ERISA permits courts to recognize an implied right of contribution, indemnification, or both, given the statute's silence on the issue." ECF No. 162 at 12. Despite this glaring acknowledgment, Acosta submits that this Court should exercise its discretion in favor of permitting contribution and indemnification because it would "deny plaintiffs (and their attorneys) the freedom to impose fiduciary liability as they see fit and, instead, allow the Court to allocate responsibility among all culpable parties." *Id.* at 17. In support

7

of his argument, Acosta points the Court to cases which hold that a right to contribution and indemnification among fiduciaries exists under ERISA's federal common law. *See* ECF No. 162 at 15-16.

Unlike the cases Acosta relies on in his brief, the instant matter does not involve co-fiduciaries who are liable to the same party during the same time. Rather, this matter involves a dispute between a former fiduciary who served as a trustee of the Plan and his successors. *See* TAC ¶ 2, ECF No. 81. Allowing Acosta's contribution and indemnification action to move forward will set a precedent that affects all fiduciaries who succeed breaching fiduciaries. More specifically, it will open the door for breaching fiduciaries to haul their successors into court to seek redress for actions they may not have been involved in. Thus, this is not the appropriate case to engraft upon ERISA the remedies of contribution and/or indemnification. Accordingly, the Court declines to consider Acosta's contribution and indemnification claims under ERISA and grants Plaintiffs' motion to dismiss with prejudice.

Notwithstanding the above, even if the Court did recognize common law contribution or indemnity, Acosta does not state a viable claim for contribution and indemnity. "The right of indemnity enures to a person who, **without active fault on his own part**, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 768 (D.N.J. 2008), *aff'd,* 594 F.3d 238 (3d Cir. 2010) (citing *Enright v. Lubow,* 202 N.J.Super. 58, 85, 493 A.2d 1288 (App. Div. 1985); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 80, 159 A.2d 97 (1960)) (emphasis added). The right to indemnity may be implied based upon the notion of what is fair and proper as between the parties. *Jeffrey Rapaport, M.D., P.A. v. Robin Weingast & Assocs., Inc.*, No. CIV.A. 11-2254 SRC, 2013 WL

8

4607104, at *2 (D.N.J. Aug. 29, 2013) (citations omitted). Generally, implied indemnity "is available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer . . . ." *Id.* "[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." *Id.* (citing *Raquet v. Braun*, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (internal quotations omitted).

Here, Acosta seeks contribution and indemnification from the Trustees because the Trustees purportedly failed to compel the Union to contribute to the Plan for the putative unpaid premiums for the health benefits that the Plan provided to its employees. *See* Counterclaim, ECF No. 125 at 18 ¶¶ 1-18. Acosta argues that the Trustees are "guilty of the same omission of which they accuse [him]." ECF No. 162 at 12. Even if that were true, indemnity "is available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer . . . ." *Jeffrey Rapaport, M.D., P.A.*, 2013 WL 4607104, at *2. Acosta does not allege that the Trustees are the actual wrongdoers responsible for the violations asserted against him in Count II of Plaintiffs' TAC. Nor does he allege that his indemnity claim is based upon a relationship that existed between him and the Trustees. Regardless of whether the Trustees are liable for breach of fiduciary duty under ERISA, Acosta's indemnification claim fails because he has not alleged that the Trustees are primarily responsible for his alleged breach of fiduciary duty or the existence of any kind of relationship upon which a claim for indemnity may rest. *See Jeffrey Rapaport, M.D., P.A.*, 2013 WL 4607104, at *2 (dismissing an indemnity claim because the defendant failed to establish that a legally significant relationship existed between them and the defendant opposing indemnification). Thus, there is no basis for indemnification.

Acosta also fails to state a claim for contribution. "Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 86–88 (1981). Recognition of the right reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability. *Id.*

Plaintiffs argue that Acosta's attempt to portray his Counterclaim against the current Trustees as a claim for common law contribution fails because Acosta and the current Trustees are not "joint tortfeasors," either under New Jersey law or federal common law. *See* ECF No. 163 at 3. Plaintiffs note that "fundamental to any claim for contribution is that the party from whom a co-party seeks contribution is liable for the *same act* for which the party seeking contribution is determined liable." *Id.* (emphasis in original). Here, Plaintiffs allege that Acosta breached his fiduciary duty when he caused the Union not to pay contributions for at least eight Union employees and affiliates that he enrolled in the Plan during his tenure as a Union Trustee. *See* TAC ¶ 51, ECF No. 81. In the Counterclaim, Acosta alleges that he is entitled to contribution from the Trustees for their failure to take any steps to compel the Union to pay its alleged debt to the Plan, which postdates Acosta's tenure as Trustee. *See* Counterclaim, ECF No. 125 at 20 ¶ 16. Construing the facts in favor of Acosta, Acosta fails to state a claim for contribution because he has not sufficiently alleged that the Trustees are liable for the same act for which he may be determined liable. Rather, his claims are based upon the Trustees' actions that occurred at a separate time and caused a separate injury. *See City Select Auto Sales, Inc. v. David/Radall Assocs., Inc.*, No. CIV.A. 11-2658 JBS, 2015 WL 4507995, at *3 (D.N.J. July 23, 2015) (to trigger

the provision of the Joint Tortfeasors Contribution Law, "the act of the alleged joint tortfeasor must have resulted in the same injury as that alleged against the entity seeking contribution, rather than a separate injury, severable in time and effect."). Thus, there is no basis for contribution. Accordingly, Acosta's claims for contribution and indemnification are dismissed with prejudice.[4]

### B. The Union's Motion to Dismiss Acosta's Third-Party Complaint [ECF No. 165].

In his Third-Party Complaint against the Union, Acosta similarly seeks to "recover contribution, indemnification, or both, in the event that the Court determines that he is in any way liable to the Plan." ECF No. 125 at 22 ¶ 10. Acosta again acknowledges that neither the Supreme Court nor the Third Circuit have spoken to whether ERISA recognizes an implied right of action for contribution or indemnification. In response, the Union correctly argues that "the Courts within the Third Circuit, as well as Courts in other circuits, have overwhelming[ly] found that contribution or indemnification was not a remedy under ERISA, federal common law or otherwise, where a non-fiduciary participated in a fiduciary breach." ECF No. 165-1 at 8 (citing *Spear v. Fenkell*, No. 13-cv-02391, 2015 WL 518235, at *3 (E.D. Pa. Feb. 6, 2015) ("there is no contribution claim in favor of a non-fiduciary, under federal common law, in response to ERISA liability under Harris Trust); *Petrilli v. Gow*, 957 F.Supp. 366, 375 (D.Conn. 1997) (non-fiduciaries cannot be sued under ERISA for contribution or indemnity); *National Elec. Benefit Fund v. Heary Bros. Lightning Protection Co.*, 931 F. Supp. 169, 191-93 (W.D.N.Y.1995) (same); *Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec. Inc.*, 823 F.Supp. 1191, 1194-95 (E.D.Pa. 1993) (same); *McLaughlin v. Biasucci*, 688 F. Supp. 965, 967 (S.D.N.Y. 1988) (same) *Remy v. Lubbock Nat'l Bank*, 403 F. Supp. 3d 496, 504 (E.D.N.C. 2019)). Thus, the Court is without basis to allow Acosta's contribution and indemnification claims to proceed.

---

[4] Plaintiffs also argue that Acosta lacks standing under ERISA. *See* ECF No. 150-1 at 11. The Court will not address this argument because it dismisses Acosta's claims on other grounds.

Accordingly, the Union's motion to dismiss Acosta's Third-Party Complaint is granted and Acosta's Third-Party Complaint is dismissed with prejudice.

### C. The Union's Motion to Dismiss the Third-Party Complaint [ECF No. 164].

The Union moves to dismiss the Bacheler Defendants' Third-Party Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(B)(6).

To provide context for this motion to dismiss, it is necessary to provide a brief synopsis of the parties' pleadings. In the TAC, Plaintiffs assert one cause of action for professional negligence against the Bacheler Defendants. *See* TAC, Count VI, ECF No. 81. Specifically, Plaintiffs allege that: 1) Bacheler did not discover or disclose that the Union failed to remit required contributions to the Plan; and 2) Bacheler either knew, should have known or negligently failed to inquire as to whether the ABA and AMA plan participants were eligible under the terms of the Plan and thus failed to reveal that they should not have been enrolled for coverage. *Id.*, ¶¶ 95-96. As a result of these purportedly professionally negligent actions, Plaintiffs claim that they suffered the following damages: 1) the failure to "collect over $720,000 in principal contributions from the Union during the period of January 1, 2001 through March 31, 2012;" 2) $417,400.34 in losses from providing self-insurance coverage to ineligible ABA and AMA plan participants; and 3) $4.16 million in increased premiums paid by the Plan to insurance companies as a result of claims made by purportedly ineligible ABA and AMA participants. *Id.*, ¶ 98.

The Bacheler Defendants filed a Third-Party Complaint against the Union, asserting claims for contribution, indemnification, and unjust enrichment. *See* Third-Party Complaint, ECF No. 126. The Union moves to dismiss the Third-Party Complaint, contending that (1) the Union is not responsible for Acosta's *ultra vires* acts, (2) the Bacheler Defendants do not have standing to bring

an action under ERISA, and (3) the Bacheler Defendants have failed to state a viable cause of action for claims of contribution, indemnification, and unjust enrichment. *See* ECF No. 164-1.

In response, the Bacheler Defendants contend that the Union's admitted failure to pay its monetary obligations to the Plan and the enrollment of the purportedly ineligible ABA and AMA participants relieves the Bacheler Defendants of any liability for damages. *See* ECF No. 171 at 12. The Bacheler Defendants further contend that the Union's execution of collective bargaining agreements that permitted the purportedly fraudulent scheme, as well as the negligent and/or knowing participation of its agent(s) in said scheme, gives rise to their claims for contribution and indemnification. *Id.*

### i. Count I – Contribution

The Union maintains that it should not be held liable to the Third-Party Plaintiffs because the Union is not a joint tortfeasor under New Jersey law. ECF No. 164-1 at 10-11. The Union acknowledges that it had a contractual obligation to remit contributions to the Plan but argues that the Bacheler Defendants are "desperately attempting to link the actions of Acosta as a Trustee to the Union in order to justify contribution." *Id.* at 10. As a result, the Union contends that it "should not be held liable to the Third-Party Plaintiffs without a legitimate cause of action." *Id.*

Notwithstanding the above, the Bacheler Defendants argue that the Union's actions led to the same alleged injury – the failure to receive the Union's contributions – which is the subject of Plaintiffs' claims against Bacheler. *See* ECF No. 171 at 18. To that point, the Bacheler Defendants contend that "Acosta – as an agent of the Union and the Union Trustee – negligently failed to ensure that the Union remitted all appropriate payments to the Plan" and that Union failed to abide by their contractual obligations. *Id.* Thus, the Bacheler Defendants contend that they are entitled

13

to contribution from the Union with respect to any of Plaintiffs' claims against the Bacheler Defendants.

"Under New Jersey law, the right of contribution exists among joint tortfeasors." *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, Civ. A. No. 97-3496, 2009 WL 5064757 (D.N.J. Dec. 16, 2009) (citing N.J. Stat. Ann. § 2A:53A-2). "The term 'joint tortfeasors' is defined as 'two or more persons jointly or severally liable in tort for the same injury to person or property.'" *Id*. (quoting § 2A:53A-1). "[T]he right arises when 'injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors.'" *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs.*, Civ. A. No. 00-2231, 2002 WL 2013925, at *2 (E.D.Pa. Aug. 29, 2002) (quoting § 2A:53A-3).

Here, the Third-Party Complaint merely alleges that the Union failed to remit any contribution under the Plan and that "Acosta either knowingly facilitated Defendant Lawrence Ackerman's fraudulent scheme or negligently or recklessly facilitated said scheme while serving as the Union's designated trustee." ECF No. 126 at 19 ¶ 13; 20 ¶ 19. The Third-Party Complaint does not, however, allege any tortious conduct of the Union and the Bacheler Defendants that caused Plaintiffs' injuries. More specifically, the Bacheler Defendants do not allege that Plaintiffs' injury or damage is "a result of the wrongful act, neglect or default of ***joint tortfeasors***."[5] *Longport Ocean Plaza Condo., Inc.*, 2002 WL 2013925, at *2 (emphasis added). Therefore, the Bacheler Defendants fail to assert a viable contribution claim. Accordingly, the Union's Motion to Dismiss is granted as to Count I of the Third-Party Complaint. This dismissal is without prejudice.

---

[5] In their Third-Party Complaint, the Bacheler Defendants repeat and incorporate the allegations contained in the Third Amended Complaint, ***except as same relate to them***. *See* ECF No. 126 at 17 ¶ 1 (emphasis added). Because the Bacheler Defendants did not include any allegations regarding their tortuous conduct, the Bacheler Defendants failed to allege that they were joint tortfeasors.

### ii. Count II – Indemnification

The Union contends that the Bacheler Defendants do not state a claim for indemnification because the Union is not a joint tortfeasor under New Jersey law. *See* ECF No. 164-1 at 11. Although the Union acknowledges that it had a contractual obligation to remit contributions to the Plan, the Union argues that the Bacheler Defendants cannot hold the Union responsible for all actions by Acosta while serving as a Trustee to the Plan simply because the Union designated Acosta as a trustee. *Id.* at 11-12.

In response, the Bacheler Defendants contend that they sufficiently state a claim for indemnification because their liability, if any, "would be merely technical and secondary in nature." ECF No. 171 at 19. The Bacheler Defendants further contend that "Plaintiffs' theory of liability against Bacheler is simply that Bacheler did not discover or directly advise Plaintiffs of something that should have been obvious to the Plan: that the Union was not remitting payments." *Id.* As a result, the Bacheler Defendants contend "Bacheler's liability for this failure to pay is purely secondary and not primary . . . ." *Id.*

As noted above, the right to indemnity may be implied based upon the notion of what is fair and proper as between the parties. *Jeffrey Rapaport, M.D., P.A.*, 2013 WL 4607104, at *2 (citations omitted). Generally, implied indemnity "is available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer . . . ." *Id.* "[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." *Id.* (citing *Raquet v. Braun*, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (internal quotations omitted).

15

In this case, the Bacheler Defendants have not alleged the existence of any relationship between them and the Union. In fact, in the Third-Party Complaint, the Bacheler Defendants allege that they are "not parties to the Trust Agreement. They are not beneficiaries of the Plan. They are not guarantors of the Union's contribution obligations in any way." ECF No. 126 at 19 ¶ 14. In the absence of any allegations of any relationship between the Bacheler Defendants and the Union, the Bacheler Defendants cannot establish a key element of a common-law cause of action for indemnification—that the Union had duty to indemnify the Bacheler Defendants. *See Jeffrey Rapaport, M.D., P.A.*, 2013 WL 4607104, at *2 ("[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor."). Accordingly, the Court will dismiss Count II of the Third-Party Complaint without prejudice.

### iii.   Count III – Unjust Enrichment

In Count III of the Third-Party Complaint, the Bacheler Defendants allege that the "Third Party Defendant has been unjustly enriched in that it secured health insurance and other welfare benefits for its members from January 1, 2001 through March 31, 2012 for which it has not paid." ECF No. 126 at 22 ¶ 32.

"To state a claim for unjust enrichment, the plaintiff must prove: (1) the defendant received a benefit from the plaintiff; (2) retention of that benefit by the defendant without payment would be unjust; (3) plaintiff expected remuneration from defendant at the time he performed or conferred a benefit on defendant; and (4) the failure of remuneration enriched the defendant beyond its contractual rights." *Zuniga v. Am. Home Mortg.*, No. 14-CV-2973 (KM), 2016 WL 6647932, at *5 (D.N.J. Nov. 8, 2016) (citing *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *6 (D.N.J.

Feb. 2, 2016) (quotations and emendations omitted) (quoting *VRG Corp. v. GKN Realty Co.*, 135 N.J. 539, 554 (1994)).

The Bacheler Defendants fail to satisfy the pleading requirements for an unjust enrichment claim. As the Union correctly argues, "the Union had no contractual obligation to Bacheler Company or Bacheler. There was no expectation of payment to Bacheler Company or Bacheler in that the Union has no relationship with either Third Party Plaintiffs." ECF No. 164-1 at 12. Although Plaintiffs are seeking damages from the Bacheler Defendants for professional negligence, the Bacheler Defendants contend that Plaintiffs' lawsuit against them "created the potential for effective transference of the Union's contractual obligations on to Bacheler." ECF No. 171 at 19. The Court finds this argument unpersuasive. Any damages awarded to Plaintiffs on their professional negligence claim, will not transfer any contractual obligations between the Union and the Bacheler Defendants. Nor will it unjustly enrich the Union at the Bacheler Defendants' expense. Thus, the Court finds that the Bacheler Defendants fail to state a claim for unjust enrichment. Accordingly, the Union's motion to dismiss is granted as to Count III of the Third-Party Complaint.[6]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Acosta's Counterclaim at ECF No. 150 is **GRANTED** and the Counterclaim is dismissed **with prejudice**; the Union's Motion to Dismiss the Bacheler Defendants' Third-Party Complaint against the Union at ECF No. 164 is **GRANTED** and the Third-Party Complaint is dismissed **without prejudice**; and the Union's Motion to Dismiss Acosta's Third-Party Complaint against the Union at ECF No. 165 is

---

[6] Because the Court dismisses each of the Counts asserted in the Third-Party Complaint, the Court will not address the Union's remaining arguments for dismissal.

**GRANTED** and the Third-Party Complaint is dismissed **with prejudice**. An appropriate Order accompanies this Opinion.

DATED: June 6, 2022

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge