**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |   |
|---|---|---|
| BOARD OF TRUSTEES, OF THE UAW GROUP HEALTH & WELFARE PLAN, *et al* | : : : : | **Civil Action No. 14-6247 (JXN) (CLW)** |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| SERGIO ACOSTA, *et al* | : : | |
| Defendants. | : : : | |

**NEALS**, District Judge:

This matter comes before the Court on the motion by Defendant Sergio Acosta for reconsideration of the Court's Opinion and Order [ECF Nos. 199, 200] granting the motions to dismiss his Counterclaim and Third-Party Complaint. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Acosta's motion for reconsideration [ECF No. 203] is **GRANTED in part and DENIED in part**.

**I.    FACTUAL BACKGROUND**

As the parties are intimately familiar with the facts of this case, the Court will only address those relevant to the present motion. This action involves a dispute surrounding the allegedly fraudulent administration of health insurance benefits to ineligible participants under the Plan. The facts as alleged in the Third Amended Complaint ("TAC") are summarized as follows. The Plan was created on or about January 1, 2001, via an Agreement and Declaration of Trust ("Trust Agreement") by and between the Union and various employers who employed individuals represented by the Union. *See* TAC ¶ 1, ECF No. 81. The Trust Agreement was enacted for

collective bargaining purposes, specifically to provide health benefits to eligible employees of the Participating Employers, the Plan, and the Union as permitted under the Employee Retirement Income Security Act ("ERISA") as well as Section 302(c)(5) of the Labor Management Relations Act of 1947 ("Section 302(c)(5)"). *Id.* ¶¶ 1, 15.

Two Trustees administer the Plan pursuant to the Trust Agreement and Section 302(c)(5), one of whom is appointed by the Union ("Union Trustee"). *Id.* ¶ 2.  Defendant Sergio Acosta served as the Union Trustee from January 1, 2001, through approximately November 1, 2011. *Id.* ¶ 5.  In this role, Acosta assumed and carried out various responsibilities such as (i) determining individuals' eligibility for benefits under the Plan, (ii) reporting the identity of eligible participants and beneficiaries to the Plan's group insurance providers, (iii) negotiating insurance contracts, and (iv) collecting contributions to the Plan and paying its expenses. *Id.* ¶¶ 2, 6, 7.  Under the Trust Agreement and pertinent collective bargaining agreements, Participating Employers must submit contributions and deductions to the Plan as well as "accurate remittance reports" at least once per month. *Id.* ¶ 18.  Furthermore, the Union must "remit contributions to the Plan on behalf of its employees" at a rate, frequency, and manner equivalent to other Participating Employers. *Id.*

From January 2001 until October 2011, Defendant Lawrence Ackerman was the chief executive officer of Atlantic Business Association, Inc. ("ABA") and Atlantic Medical Association, Inc. ("AMA"). *Id.* ¶ 8.  Ackerman formed these companies "for the purpose of deriving monetary gain by deceiving and fraudulently inducing the Plan, the Employer Trustee, and the Plan's health insurance underwriters . . . to provide medical insurance coverage to individuals who were not employees of ABA and AMA . . .."  To perpetrate this fraudulent scheme, Ackerman "solicited Acosta to cause the Plan to enter into a participation agreement with [the] ABA effective January 1, 2004[.]" *Id.* ¶ 26.  Thereafter, Ackerman solicited Acosta again on at

least two more occasions to have Acosta "prepare and execute a collective bargaining agreement between the Union and ABA" and "to prepare and execute a similar agreement between the Plan and AMA[.]"  *Id.* ¶¶ 27-28.  "ABA and AMA never employed any individuals nor engaged in any legitimate business operation that would have required employees."  *Id.* ¶ 30.

In October 2011, "Horizon notified the Plan that ABA/AMA Enrollees were not active, full-time bargaining unit employees covered by legitimate collective bargaining agreement with Union and therefore were not eligible for the Plan's coverage."  *Id.* ¶ 38.  As a result, "Horizon demanded that the Plan reimburse it for losses incurred in providing coverage to the ABA/AMA Enrollees totaling $5,632,774."  *Id.* ¶ 39.

Following Horizon's discovery of the ABA/AMA scheme, Acosta resigned as a Trustee and a third-party was retained as Administrative Manager of the Plan. *Id.* ¶ 50.  The Administrative Manager discovered that the Union was not paying any contributions for the Union enrollees.  *Id.* ¶ 52.  In fact, the Administrative Manager determined that the Union had never contributed to the Plan for the cost of the Union enrollees' coverage.  *Id.*  Acosta allegedly knew that the Union failed to meet its remittance obligations to the Plan from January 1, 2001, through March 2012, resulting in $720,000 in losses.  *Id.* ¶ 53.  As a Trustee and Plan Administrator, Acosta was responsible for ensuring that the Plan made systematic, reasonable, and diligent efforts to collect contributions owed to the Plan by the Union

On January 9, 2017, "Ackerman and Acosta were indicted by a Grand Jury in the District of New Jersey for two counts of conspiracy: one to defraud Horizon and one to defraud the Plan through the ABA/AMA scheme[.]"  *Id.* ¶ 42.  Nearly a year later, Acosta pled guilty to one count of embezzlement from an employee benefit plan and admitted to withholding the premiums the Union owed to the Plan for the Union enrollees.  *Id.* ¶ 53.

Plaintiffs initiated this matter on October 9, 2014. Shortly thereafter, the case was administratively terminated pending an investigation in a parallel criminal case involving Defendants Acosta and Ackerman. *See* ECF Nos. 73, 76. In August 2020, Plaintiffs reopened this case and filed the TAC, which lodges six counts. ECF Nos. 78, 81. As to Acosta, Plaintiffs allege breach of fiduciary duties under the Trust Agreement and ERISA, causing losses due to the coverage of ABA/AMA Enrollees (Count I); and breach of the Trust Agreement and ERISA withholding of contributions owed for union enrollees (Count II). ECF No. 81 ¶¶ 59–71. On September 18, 2020, Acosta filed a motion to dismiss the TAC, which was ultimately denied by this Court in an Opinion and Order issued March 26, 2021. *See* ECF Nos. 118, 119.[1]

On April 16, 2021, Acosta timely filed an Answer, Separate Defenses, Designation of Trial Counsel, Crossclaim, Counterclaim, and Third-Party Complaint. *See* ECF No. 125. In his Counterclaim, Acosta seeks indemnification and "contribution from the [Plaintiff Trustees] with respect to any damages that the Court might award pursuant to [Count II of the TAC]." *Id.* at 20 ¶¶ 16-18.[2] On June 24, 2021, Plaintiffs moved to dismiss Acosta's Counterclaim, arguing that ERISA contains no implied right of contribution or indemnification. *See* ECF No. 150-1.

In his Third-Party Complaint against the Union, Acosta similarly seeks to "recover contribution, indemnification, or both, in the event that the Court determines that he is in any way liable to the Plan." ECF No. 125 at 22 ¶ 10. The Union has moved to dismiss the Third-Party Complaint, contending that "the Courts within the Third Circuit, as well as Courts in other circuits, have overwhelming[ly] found that contribution or indemnification was not a remedy under ERISA,

---

[1] The Honorable Susan D. Wigenton, U.S.D.J., specifically rejected Acosta's argument that he cannot be held liable under Count II. *See* ECF No. 118 at 9-10.

[2] For sake of clarity, when citing to the parties' motion papers, the Court cites to the page number listed in the ECF header.

federal common law or otherwise, where a non-fiduciary participated in a fiduciary breach."  ECF No. 165-1 at 8.

On June 6, 2022, the Court entered an Opinion and Order granting Plaintiffs' motion to dismiss Acosta's Counterclaim and the Union's motion to dismiss Acosta's Third-Party Complaint.  *See* ECF No. 199, 200.  Acosta promptly moved the Court to reconsider its Order, contending that the Court whiffed at the pitch in concluding that Acosta could not pursue claims for contribution and indemnification against Plaintiffs and the Union.  Mot. for Recons., ECF No. 203-5.  Plaintiffs and the Union opposed the motion, ECF Nos. 213, 214, which is now ripe for the Court to decide.

## II.    LEGAL STANDARD

Local Civil Rule 7.1(i) governs motions for reconsideration.  *Agostino v. Quest Diagnostics, Inc.*, No. 04-cv-4362, 2010 WL 5392688, *5 (D.N.J. Dec. 22, 2010) (citing *Bryan v. Shah*, 351 F. Supp. 2d 295, 297 (D.N.J. 2005)).  Rule 7.1(i) permits a party to seek reconsideration by the Court of a matter which the party believes the Judge "overlooked" when it ruled on the motion.  A motion for reconsideration under Rule 7.1(i) "shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge" and submitted with a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked."  L. Civ. R. 7.1(i).

The standard for reargument is high and reconsideration is to be granted only sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).  A judgment may be altered or amended under Rule 7.1(i) if the movant shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice."  *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 667 (3d Cir. 1999) (citing *N. River*

*Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  Under this standard, courts have noted that "reconsideration is an extraordinary remedy, that is granted 'very sparingly.'"  *Brackett v. Ashcroft*, Civil Action No. 03-3988 (WJM), 2003 U.S. Dist. LEXIS 21312, *5 (D.N.J. Oct. 7, 2003) (citation omitted).

The Court will grant a motion for reconsideration only if its prior decision overlooked a factual or legal issue that may alter the disposition of the matter.  *United States v. Compactions Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  "Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of the judgment."  *NL Industries, Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996).  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."  *Tishcio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).  Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process.  *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998).

## III.   DISCUSSION

### A.   <u>Reconsideration of the Court's Order Dismissing Acosta's Counterclaim Against Plaintiffs.</u>

In support of reconsideration, Acosta advances three arguments that he also asserted in his motion to dismiss papers—the Third Circuit held that district courts are authorized to develop a federal common law of ERISA, other courts have permitted contribution claims between a former fiduciary and his successor, and Plaintiffs have engaged in the same acts that they accuse Acosta of engaging in.  As best the Court can construe, Acosta contends that the Court made a clear error of law or fact by overlooking "extensive authority holding that a former fiduciary may seek contribution and indemnification from a successor fiduciary[.]"  *See* ECF No. 203-5 at 8.  The

Court disagrees and will deny the motion, and will briefly readdress the substance of Acosta's arguments for purposes of clarity.

Acosta first argues that the Court should reconsider its Order because district courts are authorized to develop a federal common law of ERISA and other courts have permitted contribution claims between a former fiduciary and his successor. *See* ECF No. 203-5 at 9–10. In support of his argument, Acosta points the Court to the Second Circuit's decision in *Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 13–14 (2d Cir. 1991). In *Chemung*, the present trustee of the plan, along with two beneficiaries of the plan, brought an ERISA action against Sovran, the former fiduciary, alleging that Sovran had breached its fiduciary duties to the plan. *Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 13–14 (2d Cir. 1991). Chemung, the present trustee, sought to recover for the losses caused by Sovran's lack of prudence and due diligence with respect to some of the original investments made by a former trustee but continued by Sovran, as well as two other questionable investments that Sovran itself had entered into on behalf of the plan. *Id.* Sovran counterclaimed against Chemung, alleging that Chemung had failed to adequately evaluate and pursue claims of the plan and that this failure contributed to the losses which were the subject of its present suit against Sovran. *Id.* at 14. Sovran requested relief directly on behalf of the plan, as well as contribution or indemnity should it be found liable to the plan. *Id.* The district court granted Chemung's motion to dismiss, holding that there was no cause of action for contribution or indemnity under ERISA. *Id.* On appeal to the Second Circuit, the court reversed the district court's decision and held that ERISA permits a claim for contribution or indemnity. *Id.*

Relying on *Chemung*, a district court in this circuit held that a former fiduciary asserted a valid counterclaim for contribution and indemnity against the trustees of an employment benefit

plan.  In *Green v. William Mason & Co.*, 976 F. Supp. 298, 299 (D.N.J. 1997), the plaintiffs were trustees of the Elevator Constructors Union Local No. 1 Annuity and 401(K) Fund.  *Id.*  In 1991, the plaintiffs retained the defendant PFE to perform certain services for the Fund, including the preparation of quarterly reports analyzing the aggregate performance of portfolios managed by each of the Fund's investment managers.  *Id.*  In the same year, the Fund retained defendant WMC as one of its investment managers.  *Id.*  Between 1991 and 1994, the plaintiffs alleged that WMC made inappropriate investments on behalf of the Fund, which resulted in substantial loss on those investments.  *Id.*  Shortly thereafter, the plaintiffs initiated their lawsuit against defendants PFE and WMC, alleging various violations of ERISA, among other claims.   PFE asserted a counterclaim against the trustee plaintiffs seeking indemnification or contribution from them for any damages assessed against it based on the plaintiffs' ERISA and state law claims.   *Id.*  PFE argued that it is entitled to indemnification or contribution because the trustee plaintiffs were aware of the nature of WMC's trades and had access to essentially the same information it did concerning WMC's investment activities.  *Id.*  Therefore, PFE argued that if it is found to have breached its duties to the Fund under ERISA, the trustees must also have violated their duties to the Fund by authorizing or acquiescing in WMC's activities and failing to take action to prevent or limit the Fund's losses.  *Id.*  Persuaded by the reasoning of *Chemung*, the court held that defendant PFE asserted a valid counterclaim for contribution or indemnity and denied plaintiffs' motion to dismiss.  *Id.* at 301.

In its original Opinion, the Court reviewed these cases and declined to follow.  *See* ECF No. 199 at 8 (noting that Acosta points the Court to cases which hold that a right to contribution and indemnification among fiduciaries exists under ERISA's federal common law.).  The Court noted that "the instant matter does not involve co-fiduciaries who are liable to the same party

during the same time" and "[a]llowing Acosta's contribution and indemnification action to move forward will set a precedent that affects all fiduciaries who succeed breaching fiduciaries." *Id.* Given that neither the U.S. Supreme Court nor the U.S. Court of Appeals for the Third Circuit had decided whether ERISA permits courts to recognize an implied right of contribution or indemnification, the Court concluded that "this is not the appropriate case to engraft upon ERISA the remedies of contribution and/or indemnification." *Id.*

To provide further context for the Court's decision, the Court notes that *Chemung* and *Green* are factually distinguishable from the instant matter. Those matters involved disputes between fiduciaries who were either involved or aware of the breaching conduct that was alleged to have violated ERISA. For example, in *Chemung*, the former trustee sought contribution and indemnification from the current trustee, alleging that his failure to adequately evaluate and pursue claims of the plan contributed to the losses which were the subject of its present suit against former trustee. *Chemung*, 939 F.2d at 13–14. In *Green*, defendant PFE argued that it is entitled to indemnification or contribution because the trustee plaintiffs were aware of the nature of WMC's trades and had access to essentially the same information it did concerning WMC's investment activities. Defendant PFE and the trustee plaintiffs served as fiduciaries of the ERISA plan at the same time. Unlike *Chemung* and *Green*, here, there is nothing in the record before the Court that indicates that the trustee Plaintiffs had any involvement or were aware of Acosta's illegal scheme.

Further, this action involves a dispute surrounding the allegedly fraudulent administration of health insurance benefits to ineligible participants under the Plan. There was a parallel criminal case arising out of the same facts and circumstances as the civil litigation, which ultimately resulted in the indictment of Defendants Acosta and Ackerman on January 9, 2017. *See* TAC ¶ 42. Following the indictment, Acosta pled guilty to one count of embezzlement from an employee

benefit plan and admitted to withholding the premiums the Union owed to the Plan for the Union enrollees. *Id.* ¶ 53. Plaintiffs were not charged with any crimes in connection with this matter and nothing in the record before the Court indicates that Plaintiffs had any involvement in this illegal scheme. Despite that, Acosta argues that he has a right to contribution against Plaintiffs because they failed to compel the Union to repay the debt that Acosta has admitted to withholding from the Plan. *See* ECF No. 203-5 at 11-13. To further complicate matters, Acosta submits that Plaintiffs entered into a Tolling Agreement with the Union, which provides "that the parties were entering into the Agreement to give them time to negotiate a possible settlement of the Plan's claims against the Union." *See* ECF No. 125 (citing Tolling Agreement, ECF No. 81-7 at 2). Given the fact that Acosta admitted to withholding the premiums the Union owed to the Plan, nothing in the record indicates that Plaintiffs had any involvement in Acosta's illegal scheme, and Plaintiffs are engaged in settlement negotiations over the Union's payment obligation, the Court determined that this was not the appropriate case to engraft upon ERISA the remedies of contribution and/or indemnification.

Next, Acosta argues that Plaintiffs have engaged in the same acts that they accuse Acosta of engaging in. The Court addressed this argument in its original Opinion. In the instant matter, Plaintiffs allege that Acosta breached his fiduciary duty when he caused the Union not to pay contributions for at least eight Union employees and affiliates that he enrolled in the Plan during his tenure as a Union Trustee. *See* TAC ¶ 51, ECF No. 81. Acosta counters that he is entitled to contribution from the Trustees because they failed to take any steps to compel the Union to pay its alleged debt to the Plan. Counterclaim, ECF No. 125 at 20 ¶ 16. In other words, Plaintiffs accuse Acosta of creating the funding deficiency in the Plan and Acosta accuses Plaintiffs of not compelling the Union to cure that deficiency. As the Court explained in its original Opinion,

Acosta fails to state a claim for contribution because he has not sufficiently alleged that the Trustees are liable for the same act for which he may be determined liable. Thus, there is no basis for contribution. Accordingly, Acosta's motion for reconsideration on this issue is denied.

### B. Reconsideration of the Court's Order Dismissing Acosta's Third-Party Complaint Against the Union.

Acosta contends that the Court should reconsider its Order dismissing his Third-Party Complaint because the "Court overlooked Acosta's argument that the Union acquired fiduciary status because it had the Power to appoint the Union Trustee." *See* ECF No. 203-5 at 13. Despite Acosta's claims to the contrary, the Court considered this argument and noted that "the Court is without basis to allow Acosta's contribution and indemnification claims to proceed" because "neither the Supreme Court nor the Third Circuit have spoken to whether ERISA recognizes an implied right of action for contribution or indemnification." *See* ECF No. 199 at 11. In reaching its decision, the Court also noted that "the Union correctly argues that 'the Courts within the Third Circuit, as well as Courts in other circuits, have overwhelming[ly] found that contribution or indemnification was not a remedy under ERISA, federal common law or otherwise, where a non-fiduciary participated in a fiduciary breach.'" *See* ECF No. 199 at 11. As a result, the Court declined to permit Acosta's contribution and indemnification claim against the Union.

Next, Acosta contends that the Court did not adequately address his argument that he could seek contribution and indemnification from a non-fiduciary that knowingly participated in the underlying breach. *See* ECF No. 203-5 at 15. In support of his argument, Acosta points to *Weir v. Nw. Nat. Life Ins. Co.*, 796 F. Supp. 846, 848 (E.D. Pa. 1992). In *Weir*, the court adopted the reasoning of earlier decisions from courts in the Third Circuit that held that liability under ERISA may be imposed upon non-fiduciaries who knowingly participate with a fiduciary in a breach of trust. *Id.* The court held that "in order to adequately state a claim for relief against a non-fiduciary

under ERISA, a plaintiff must allege that the non-fiduciary "knowingly participated in a breach of trust with a fiduciary." *Id.* In response, the Union does not attempt to distinguish this case. Rather, the Union argues that "[n]either the Third-Party Complaint nor any other pleading asserts that any Union officer participated in the fraudulent administration of health insurance benefits except for Acosta himself while he was the Union's president." ECF No. 214 at 12. The Court agrees that the Third-Party Complaint does not sufficiently allege that the Union knowingly participated in the fraudulent administration of health insurance benefits. Thus, the Court's Order dismissing Acosta's contribution and indemnification claims against the Union was appropriate. Nevertheless, the Court must alter its Order to prevent a manifest injustice. More specifically, in light of the court's decision in *Weir*, Acosta should be given the opportunity to amend his pleading to include any omitted allegations regarding the Union's alleged participation in the illegal scheme. To deny Acosta this right would be prejudicial.

Accordingly, Acosta's motion to reconsider the Court's Order dismissing Acosta's Third-Party Complaint against the Union is granted. The Court will change the Order of dismissal with prejudice to an Order of dismissal without prejudice.

## C. Acosta's Request to Certify the Court's Opinion and Order as a Final Judgment.

Acosta requests that in the event this Court finds that there are insufficient grounds to reconsider its June 6, 2022 Opinion and Order, that the Court certify its Opinion and Order as a final judgment pursuant to Fed. R. Civ. P. 54(b).

Federal Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claims—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).  "Certification under Rule 54(b) is the exception, not the norm."  *Indivior Inc. v. Dr. Reddy's Labs. S.A.*, 2020 WL 4932547 at *11 (D.N.J. Aug. 24, 2020).  When "the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, Rule 54(b) certification is disfavored," *id.* at 12, and "should be used only in the infrequent harsh case as an instrument for the improved administration of justice."  *Id.* at 11.  Thus, "'[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.  The function of the district court under the Rule is to act as a 'dispatcher.'  It is left to the sound judicial discretion of the district court to determine' when an action may be certified as final."  *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8–9 (1980)).

As noted above, the Court will alter its Order of dismissal with prejudice to an Order of dismissal without prejudice as to Acosta's Third-Party Complaint against the Union.  Acosta will be granted leave to amend his Third-Party Complaint.  Accordingly, Acosta's request that that the Court certify its Opinion and Order as a final judgment is denied as moot.  Should Acosta wish to seek certification under Rule 54 of the Court's Order denying Acosta's Counterclaim against the Plaintiffs, Acosta may file a separate request.

## IV. CONCLUSION

For the foregoing reasons, Acosta's motion for reconsideration [ECF No. 203] is **GRANTED in part and DENIED in part**.  An appropriate Order accompanies this Opinion.


s/ Julien Xavier Neals
DATED: April 14, 2023          **JULIEN XAVIER NEALS**
United States District Judge